## Brunner v. American Telegraph & Telephone Co., Appellant.

*Liability of employer for acts of employee—Evidence.*

Plaintiff's horse was frightened by the explosion of a dynamite cap by an employee of defendant company. The employee was not employed to handle caps but for other purposes entirely distinct. There was some evidence from which it might be inferred that the employee exploded the cap as a test for the benefit of defendant. *Held,* that the testimony of the employee that the explosion was made not in the line of his employment but for his own amusement, was competent evidence to go to the jury on the question of whether at the time of the explosion he was acting in the line of his employment or not.

Argued March 2, 1892. Appeal, No. 178, Jan. T., 1892, by defendant, from judgment of C. P. Berks Co., No. 15, Dec. T., 1889, on verdict for plaintiff, Francis Brunner. Before STERRETT, WILLIAMS, GREEN, McCOLLUM and MITCHELL, JJ.

Trespass for injuries suffered by plaintiff by reason of his horse becoming frightened and running away, caused by explosion of dynamite cap by one of defendant's workmen, John Delaney. The facts appear by the opinion of the Supreme Court.

At the trial, before ENDLICH, J., defendant offered in evidence deposition of John Delaney taken upon interrogatories:

"2d interrogatory: Were not the cartridges or caps or both

which were exploded, furnished you by the said company? *Answer:* The cap which I exploded I got of Livingston [I had no orders to fire it; it was none of my business whether they were wet or dry], they were not furnished to me by the company."

" 3d interrogatory : State who exploded the cap or cartridge, and whether the person who exploded the same was employed by the American Telegraph and Telephone Company, [and if so, whether the cap or cartridge was exploded by such person in the line of his employment by said company, or any of its officers or agents, or whether it was a willful act of such person, not in the line of his employment nor for any useful purpose.] State all the facts and particulars of the occurrence, as fully as you can remember them. *Answer:* I had not commenced my day's work for the company, but was on my way from my boarding house to the place where the poles were to be set, with Crofton, who was also of the pole gang. We were just going down a little hill near the bridge when we met Livingston, the blasting man of the digging gang, coming from the place where he kept his fuse, caps and dynamite; he said the caps were spoiled by the rain, and I asked him to let me have some and he gave me some caps and a piece of fuse and went along. up the hill towards his place of work, and I put a piece of fuse in a cap and lighted it, [just to see if it would go off and not in the line of my employment by the company, or of its officers or agents, nor for any useful purpose, but just for fun.] . . . ."

So much of the answer to the 2d interrogatory as is enclosed in brackets was objected to as not being responsive to the question. Those parts of the 3d interrogatory and answer in brackets were objected to, as they asked the witness for an opinion or inference from facts. [The court excluded the parts objected to.] · [1]

The court charged in part as follows :

" But there is some evidence to show that Livingston was by when the cap was exploded, was among those who had it and exploded it, and taking this, together with the fact that Delaney asked for the cap with a view to see whether it would explode, and the testimony that another cap had shortly before been exploded, it is claimed by the plaintiff that it may be inferred

that Delaney and Livingston were acting together in this matter and that Livingston permitted Delaney to make this experiment which he (Livingston) had just been making to ascertain whether or not the cap would explode, and that Delaney's act was, in fact, that of Livingston. . . . If, however, in the exercise of your conscientious judgment, you find that Livingston gave these caps to Delaney to explode them in his presence, as a test of their usefulness, then you would be justified in finding for the plaintiff." [2]'

Defendant's points, refused, were among others as follows:

" 1. There being no evidence in this case tending to prove that the cap was exploded by any employee of the defendant company within the line of his duty, there can be no recovery and the verdict must be for the defendant." [3]

" 2. It appearing from the uncontradicted evidence that John Delaney exploded the cap which is alleged to have caused the accident, that the said John Delaney belonged to the pole gang whose duty it was to set up the poles previously dug by another gang, and that it was not within the scope of the authority or employment of the men employed in the pole gang to handle explosives or do blasting for the company, the explosion of a cap by the said John Delaney, under the circumstances detailed in the evidence, however negligent on his part, was not the negligence of the company defendant." [4]

" 7. Under all the evidence in this case, the verdict must be for the defendant." [5]

Verdict for plaintiff, $4,790; judgment. After entry of judgment defendant petitioned the court to open the judgment and set aside the verdict on the ground of newly discovered evidence; and presented the affidavit of Livingston averring that he had not ordered nor requested Delaney to explode the cap nor was the explosion of the cap for the purpose of testing the usefulness of the caps; and an affidavit that every effort had been made to find Livingston before the trial but without success. The court refused the petition on the ground that, the term having passed, they could not open the judgment.

*Errors assigned* were (1) exclusion of parts of depositions in brackets, quoting them, but not quoting the grounds of objection or bill of exception; (2–5) instructions, quoting them.

*Richmond L. Jones*, for appellant.—The witness Delany's declaration that he fired the cap for fun was a fact, not an opinion, and should have been admitted: Cake v. Pottsville Bank, 116 Pa. 270; Cullmans v. Lindsay, 114 Pa. 166; Juniata Building Ass'n v. Hetzel, 103 Pa. 507. What was in the line of witness's employment was not matter of opinion but of fact. The true line of distinction is this: An inference necessarily involving certain facts may be stated without the facts, the inference being an equivalent to a specification of the facts; but when the facts are not necessarily involved in the inference, then the facts must be stated. In other words, when the opinion is the mere shorthand rendering of the facts, then the opinion can be given subject to cross-examination as to the facts on which it is based: Wh. Ev., § 510, 9th ed. There was no evidence to warrant the verdict.

*C. H. Ruhl*, with him *Daniel Ermentrout*, for appellee.—Livingston was an officer of a corporation and for all practical purposes must be regarded as the corporation itself: Ardesco Co. v. Gilson, 63 Pa. 150; Frazier v. R. R., 38 Pa. 104.

Negligence is absence of care according to the circumstances: Turnpike Co. v. R. R., 54 Pa. 345; R. R. v. Stinger, 78 Pa. 225; Ellis v. R. R., 138 Pa. 506; Sandford v. R. R., 136 Pa. 84. Dangerous things must be carefully kept: Ray. Negl. of Imp., Duties, 153; Ry. v. Shields, 47 Ohio St. 387. A tort committed by agent in line of duty makes principal liable: 2 Morawetz, Corp. § 750; Pollock, Torts, 407; Ry. v. Shields, supra; Singer Manfg. Co. v. Rahn, 132 U. S. 522; Ry. v. Derby, 14 Howard, 487. Delaney was not an independent agent as in Mahanoy Twp. v. Watson, 112 Pa. 574, and Ry. v. Trich, 117 Pa. 390. The facts in Booth v. Muster, 7 C. & P. 66, are like in principle to those of this case, and the facts in Althorf v. Walfe, 22 N. Y. 355, where master was held for negligence of stranger employed by his servant. If there is any evidence beyond a scintilla it is for the jury: Patterson v. Dushane, 115 Pa. 334; Fisher v. R. R., 131 Pa. 292; Penna. R. R. v. Spicker, 105 Pa. 142; Young v. R. R., 115 Pa. 112; R. R. v. Sellers, 127 Pa. 406.

OPINION BY MR. JUSTICE WILLIAMS, October 3, 1892.

This case was tried with care and discrimination by the

learned judge of the court below, but in one particular at least we think he fell into error. The plaintiff's right to recover rested on a theory which drew its support mainly from inference. There was really no controversy over the important facts in the case. The plaintiff was thrown from his buggy and injured because of the sudden fright of his horse which made it uncontrolable. The fright was caused by the explosion of a percussion cap of the kind used in blasting with dynamite, near the highway on which the plaintiff was driving, and but a little way in front of him. The cap was exploded by Delaney who was an employee of the defendant company. But the defendant denied its liability for Delaney's act, alleging that it was not done within the scope of his employment or in the service of the company but for his own amusement or the gratification of an idle curiosity. The contest narrowed down to this question. In support of their position the company proved that it had two gangs of workmen employed in the construction of its line who were independent of each other and with different duties. One, known as "the digging gang," dug and prepared the holes into which the poles were to be set. The other, known as "the pole gang," came behind and set or planted the poles in the holes that had been made ready by the digging gang. With the first of these gangs was a man known as the dynamite man, who had charge of, carried and exploded the dynamite used in blasting such rocks as the digging gang could not dispose of with pick and bar. Delaney belonged to the pole gang. On the morning of Monday the sixteenth day of September, 1889, both gangs came on the line to resume work. The digging gang went forward to dig at the place where they left off on Saturday night. Livingston, the dynamite man, went to a barn not far from the highway where his cartridges and caps had been stored to get a supply for the day's work among the diggers. When he came out the members of the pole gang or some of them were standing near and unemployed. He remarked that some of the caps had water in them and were worthless. Delaney said to him "give me some of them caps." He gave him one or more of them and a piece of fuse and, as he testifies, went forward towards the digging gang some little distance, when he heard a report.

Delaney and another man whose name was Grofton had ex-

ploded a cap, and the fright of the horse and the injury to the plaintiff had resulted. It was quite clear that the scope of Delaney's employment did not include the use of explosives for any purpose. Unless therefore the explosion of the cap could be connected with Livingston so as to become his act, there was no way by which the folly or negligence of Delaney and Grofton could be charged to the company defendant. To make the necessary connection the theory was suggested that Delaney's object was to determine whether the caps were valuable or not, and his experiment was in the interest and for the benefit of the company, and the information of Livingston who stood by and tacitly authorized it to be made. There was no direct evidence in the support of this theory but the learned judge submitted the question to the jury with the instruction that if they should find from the facts before them the cap was exploded in the presence of Livingston and as a test of the usefulness of the caps that had been wet, they would be justified in finding in favor of the plaintiff. This fixed the attention of the jury, and poised their verdict, upon the character of the act of Delaney in exploding the cap. Livingston and Delaney were the persons who of all others were capable of throwing light upon this subject. The testimony of Livingston was strongly against the theory of the plaintiff. The deposition of Delaney had been taken and the defendant offered to show by it what the character of his act really was. He had testified that he did not obtain and explode the cap in the course of his employment, nor at the request of any officer or agent of the company, nor yet for any useful purpose, but for his own amusement and to satisfy his own curiosity. This was the precise point to be settled. The fact was peculiarly within his knowledge. He had stated what the fact was. The court however excluded his answer, and the ruling is the basis of the first assignment of error. The answer should have gone to the jury. The witness had stated the fact of his employment by the defendant, and the fact that he exploded the cap; and the jury were being asked to infer, from these answers and the surrounding circumstances, that his act was in effect the act of Livingston, done in the line of Livingston's employment and for his guidance. It was incumbent on the defendant therefore to show what the fact was, and explain fully the con-

duct of Delaney, and for this purpose it was competent to show by him that he was gratifying an idle curiosity and diverting himself and those about him. His credibility was for the jury but his testimony upon this point was relevant and competent. The first assignment of error is sustained.

The extract from the charge embodied in the second assignment states as a fact that Livingston when he gave the cap to Delaney had just been making an experiment to determine whether the caps would explode. As we understand Livingston's testimony he distinctly denies that he had made such an experiment. There was some evidence that a previous explosion had been heard but whether it was a cap, and if so by whom it was exploded, does not appear. The question was for the jury and the statement by the court was necessarily harmful to the defendant.

The third and fourth assignments of error are not sustained. The points on which they are predicated assumed a fact which the jury might find, and actually did find, to be otherwise. The question which the learned judge submitted was in the case. The jury had the witnesses before them, and whether the inference was a fair one from all the testimony that Delaney was acting for and in the stead of Livingston in exploding the cap and for the purpose of determining the value of the caps which Livingston at first thought were ruined, was for them to determine. The judge could not, upon the evidence, determine this question and give a binding instruction, as these points requested him to do, without invading the province of the jury. It is true the direct evidence was against the plaintiff's theory, but there was a basis, though a pretty narrow one, for the inference to rest upon. Whether it was a sufficient basis was primarily for the jury and if their conclusion was conscionable, though the judge might think the preponderance of the evidence was the other way, their verdict would not be disturbed.

The judgment is reversed and a venire facias de novo awarded.