# Guinney *v.* Hand et al., Appellants.

*Negligence — Master and servant—Scope of employment — Question for jury—Charge of court.*

The question whether a servant was acting within the scope of his employment when he committed a negligent act is a question of fact for the jury.

In an action to recover damages for personal injuries, it appeared that plaintiff was injured by being run into by a beer wagon driven by an employee of defendants.   The driver testified that just before the accident occurred he unloaded a barrel of porter, and undertook to tap it, as he was instructed to do for all his employer's customers.   In doing so he broke a wooden faucet, when the saloon keeper for whom he was unloading the porter asked him to go to a street some distance off, and buy a faucet, giving him the money to pay for it.   In driving rapidly on this errand, he ran into and injured plaintiff.   Plaintiff testified that on the day following the accident defendants came to his house, and told him that they would pay his doctor's bill and expenses, and stated that they had discharged the driver the night before.   This conversation was denied by defendants. The court charged that if the jury believed plaintiff's testimony, defend-

ant's liability was fixed; but in other parts of the charge and in answer to several points, the question was distinctly left to the jury to determine whether the driver was acting within the scope of his employment. *Held*, that there was no error which justified the reversal of the judgment.

Argued Feb. 23, 1893.  Appeal, No. 135, Jan. T., 1893, by defendants, Michael Hand et al., trading as the Scranton Brewing Company, from judgment of C. P. Lackawanna Co., Oct. T., 1889, No. 459, on verdict for plaintiff, James Guinney.  Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Trespass for personal injuries.

The facts appear by the opinon of the Supreme Court.

The court charged in part as follows :

["Now, on the part of the defence it is alleged that the accident occurred not through the negligence of the defendants, but, if at all, it occurred through the negligence of their employee, Thomas Carroll, who was their driver.  The defendants allege that they are not responsible for his conduct for the reason that at the time the accident occurred he was not acting within the scope of his employment.] [5]  That he was on an independent message or errand for Patrick Loftus, a person to whom he was delivering a barrel of porter.  Carroll testifies that about three o'clock in the afternoon he delivered a barrel of porter to Loftus, and that after he got it in the cellar he attempted to tap it, and Loftus said to look out, that the tap was defective or liable to break; it did break, and Loftus told Carroll to come down town and get another tap; that he started on the wagon with a two dollar bill which he had received from Loftus, and came to Hunt & Connell's store and procured the faucet, and started back to Loftus's.  In the meantime he stopped to see what had occurred at this wood working place on Penn avenue, and from there he proceeded to Loftus's.

["Now, we leave that as a matter of fact for you, gentlemen of the jury, to say whether or not the going for the faucet was not within the scope of his employment.  He swears that he was obliged to tap ale or porter as he delivered it; that he swears was within the scope of his employment.  Now, does it follow as a natural deduction from that, that this porter was not tapped when this faucet broke, and that he started back at the instance of Loftus to procure another faucet.  We sub-

mit that as a question of fact for you, gentlemen of the jury, whether he was within the legitimate scope of his employment. If he was not, that is the end of this case.] [3]

["Independent of that the plaintiff has made no case whatever until they offer the testimony of the plaintiff in this case, James Guinney, and his wife, who testify that on the morning following this accident both Mr. VanDyke and Mr. Hand came to their house, and they spoke with Mr. Guinney and told him whatever his doctor bill was, what his loss of time was, and what the damage to his clothing was, that they would pay; that Carroll was a good-for-nothing drunken loafer, and that they had discharged him the night before.

"Now, if you believe that testimony, that fixes their liability, because by that admission it shows that this man was in their employ, and by their further admission that he was acting within the scope of his employment. However, that will be a fact for you to determine, as both Mr. Hand and Mr. VanDyke swear that they made no such statement or made no such admission whatever to Mr. or Mrs. Guinney. Mr. Hand testifies that he did not hear such a statement made by Mr. VanDyke, and that no such statement was made by himself. Mr. Van-Dyke swears that he did not hear Mr. Hand make such a statement, and that such a statement was not made by him. It will be for you, gentlemen of the jury, to reconcile this testimony and say whether you believe the testimony of Mr. and Mrs. Guinney, or whether you believe the testimony of Van-Dyke and Hand, the defendants.] [1]

["The witnesses on the part of the plaintiff testify that this driver of Hand & VanDyke on this day was driving in a very reckless manner, and that he was intoxicated. Now, the question of his intoxication has nothing whatever to do with this case. It is a question of his recklessness; it is a question whether he was acting within the scope of his authority or his employment for VanDyke & Hand at the time; that is the test; not whether he was drunk or whether he was sober. The witnesses testify that he was endeavoring to run a race with the street car; that he was endeavoring to embarrass the driver of the street car by running the wagon zigzag across the railroad track, coming up Penn avenue, going on the track and then off, going zigzag over the tracks; that he was driving his

horses in this manner, with the lines loose, and shaking them on the horses. That we say to you as a matter of law was recklessness and carelessness on the part of the driver. The witnesses testify that when the accident occurred that state of affairs existed—he was driving in that manner.] [4]

" Now, gentlemen of the jury, if you find that Thomas Carroll, the driver, at the time this man was struck, if he was struck, by the team or one of the horses of the firm of Van-Dyke & Hand, was in the employ of VanDyke & Hand, and that he was acting under the scope of his authority, then your verdict should be for the plaintiff."

Plaintiff's point was among others as follows :

" 5. That if the jury believe the evidence of his witnesses, the plaintiff is entitled to recover the direct expenses incurred by him, and for his privation and inconvenience he has been subjected to, and for the pain and suffering, bodily and mental, which he has already endured or is likely to experience from the injuries received by him in the accident, as well as the pecuniary loss he has already sustained and is likely to sustain during the remainder of his life from his disabled condition." Affirmed. [2]

Verdict and judgment for plaintiff for $525. Defendants appealed.

*Errors assigned* were (1–5) instructions, quoting them.

*C. Comegys, S. B. Price* with him, for appellant.—If the court, in the charge to the jury, refer to the evidence and comment upon it, they should bring every part of it which bears upon the point to the notice of jury, so that they may not be misled : Nieman v. Ward, 1 W. & S. 68 ; Parker v. Donaldson, 6 W. & S. 132 ; Heilbruner v. Wayte, 51 Pa. 259 ; Brown v. Finney, 53 Pa. 373.

Where the master has neither ordered the thing to be done nor allowed the servant any discretion as to the mode of doing it, the master cannot be held responsible : Towanda Coal Co. v. Heeman, 86 Pa. 420 ; Bard v. Yohn, 26 Pa. 482 ; Flower v. Pa. R. R. Co., 69 Pa. 214 ; Bard v. Yohn, 26 Pa. 482.

*R. A. Zimmerman* and *J. E. Burr*, for appellee, cited James v. Campbell, 8 Carr. & P. 372 ; Norris v. Kohler, 41 N. Y. 42 ; Brunner v. American Telegraph and Telephone Co., 151 Pa.

447; Johnson v. Armour, 18 Fed. R. 490; Sh. & Red. on Neg. 371; Whart. Neg., §§ 167 and 168; Smith, Master and Servant, pp. 341 and 342 and note *n*; McClung v. Dearborne, 134 Pa. 404; Mitchell v. Crassweller, 13 C. B. 237; Kimbal v. Cushman, 103 Mass. 194; 6 Fisher's Dig. 8931.

OPINION BY Mr. CHIEF JUSTICE STERRETT, March 6, 1893:

It is practically conceded that the injuries suffered by plaintiff were directly caused by the reckless negligence of Thomas Carroll, who, at the time they were inflicted, was employed by the firm defendants in delivering beer, etc., to their customers. For that purpose he drove their beer wagon by which plaintiff was struck and injured. It is also conceded that if Carroll was acting within the general scope of his said employment, at the time plaintiff was injured in consequence of his negligent driving, defendants would be liable; but it is alleged that, notwithstanding he was actually driving their wagon, he was then in the temporary service of Patrick Loftus, one of their customers, to whom he had, a few minutes before, delivered a barrel of porter. Carroll testified that, on the afternoon in question, he drove out from the brewery, in company with one of the defendants, with several barrels of ale and a barrel of porter; that, after delivering some of the ale, he went to Patrick Loftus's place, unloaded the barrel of porter, and undertook to tap it as he was instructed to do for all his employers' customers. In the language of the witness, Loftus "had a wooden faucet and I busted it in tapping the porter. It was very lively porter, very wild, and it was leaking, and he asked me if I would go to Lackawanna avenue and bring him back a faucet, and he gave me a two dollar bill, and I paid $1.75 for a brass faucet. . . . I drove pretty lively to Lackawanna avenue; I came down Penn avenue; . . . . and there was a couple of teams ahead of me, and I was in a hurry to get the faucet and get back and put in this other faucet, and I went to pull across, my team got a little excited, I think they did, and they went across the track, and my wagon striking Mr. Guinney that is something I never seen, and don't believe it; I don't see how it could." The witness proceeded to say that after being informed of plaintiff's injury, etc., he drove on, got the faucet, returned to Loftus's place and tapped the barrel of porter.

This is the sort of loophole through which defendants endeavored to escape liability for the negligence of their driver.

In their second point for charge, they requested the court to say : " If the jury believe that at the time of the accident, Carroll was not acting within the scope of his employment, but was acting for somebody else, the plaintiff is not entitled to recover." The court a irmed this point without any qualification.

In their fourth point, which was also affirmed, they asked the court to charge : " That it was not in the scope of Thomas Carroll's authority as a servant or employee of the defendants to drive the team of defendants about the streets of Scranton on errands for Patrick Loftus, and if the jury believe that, at the time of the accident, he was on such an errand, the plaintiff cannot recover in this case."

In answer to plaintiff's sixth point,—" Under all the evi dence in this case it is for the jury to say whether the defend ants were guilty of negligence,"—the learned judge said : " That is to say, whether the defendants' driver was guilty of negligence, and whether he acted at the time within the scope of his employment."

Again, in that part of his general charge recited in the third specification of error, he said : " We leave that as a matter of fact for you, gentlemen of the jury, to say whether or not his going for that faucet was not within the scope of his employment. He says he was obliged to tap ale or porter as he delivered it ; that he swears was within the scope of his employment. Now, does it follow as a natural deduction from that, that this porter was not tapped when this faucet broke, and that he started back at the instance of Loftus to procure another faucet? We submit that as a question of fact for you, gentlemen of the jury, whether he was within the legitimate scope of his employment. If you find he was not, that is the end of the case."

It is impossible to read the charge, and answers to points above referred to, without being convinced that the learned judge intended to submit, and did clearly submit to the jury the question of Carroll's negligence, and also, especially, the question whether at the time of plaintiff's injury, the former was acting within the scope of his employment as defendants'

servant. This latter thought is so clearly and so frequently presented that the jury could not fail to understand that they were expected to consider and determine that question under all the evidence before them.

Standing alone, that part of the charge recited in the first specification might lead to a different conclusion, and therefore be erroneous ; but, considered in connection with other parts of the charge, we think it is very manifest that the court did not intend to give the jury any binding instruction as to the question, whether, at the time plaintiff was injured by Carroll's negligence, the latter was acting within the scope of his employment. In saying, " Now, if you believe that testimony, that fixed their liability, because by that admission it shows that this man was in their employ, and by their further admission, that he was acting within the scope of his employment,"— we cannot think the learned judge intended to do more than to convey the idea that defendants' admissions were evidence of, and tended to fix their liability. If more than that was intended, it was a mistake, because the question whether Carroll was acting within the scope of his employment, etc., was clearly a question of fact for the jury : Brunner v. Telegraph Co., 151 Pa. 447 ; Johnson v. Armour, 18 Fed. R. 491 ; Dwinelle v. Railroad Co., 120 N. Y. 117. But, whatever impression may have been conveyed by the language quoted in the first specification, it is very evident that the charge, as a whole, could not have been misleading.

The verdict, in favor of the plaintiff, is necessarily predicated of a finding of all essential questions of fact as claimed by him ; and there was an abundance of evidence to warrant the jury in doing so. The specifications of error do not require special notice.

There is nothing in either of them that calls for a reversal of the judgment.

Judgment affirmed.