[Civ. No. 198.    Second Appellate District.—June 22, 1906.]

## RICHARD R. DINNIGAN, Appellant, v. N. P. PETERSON, Respondent.

NEGLIGENCE—CARRIER OF PASSENGERS—DEGREE OF CARE REQUIRED—PRESUMPTION—FINDING AGAINST EVIDENCE.—A common carrier of passengers owes to every passenger the utmost care, and where a passenger is injured by an instrumentality used by the carrier in the prosecution of its business, the presumption is that it occurred by the negligence of the carrier's servant; and where there is no evidence tending to rebut such presumption, a finding that there was no negligence is against the evidence.

ID.—NEGLIGENCE OF DRIVER OF STAGE-COACH—UPSET ON DANGEROUS TURNOUT—FAILURE TO WARN PASSENGERS.—Where the driver of a stage-coach approaches a place of particular danger to passengers, he is bound to warn them of the nature of the danger, to the end that they may choose whether they will run the risk or not, and in view of the rough character of a turnout on a mountain road, which he must traverse in passing a ten-horse team, and safely turn in again on a narrow place, covered with boulders, on which the stage was upset, it was negligence on his part not to warn the passengers of the danger, in order that an opportunity might be afforded them to alight and avoid the danger.

ID.—CONTRIBUTORY NEGLIGENCE—ATTEMPT TO JUMP FROM UPSETTING COACH.—It was not contributory negligence for the plaintiff to attempt to jump from the overturning coach, which the driver drove into a dangerous place, thereby exposing the passengers to

peril, there being nothing in the evidence to indicate that the action of the plaintiff contributed in any degree to its overturning.

ID.—BEWILDERMENT CAUSED BY NEGLIGENCE.—The bewilderment and confusion of mind of the plaintiff, though aggravating his peril, which was caused by the driver's negligence, is part of the injury inflicted by the negligent person, and is not chargeable as contributory negligence.

APPEAL from a judgment of the Superior Court of Kern County, and from an order denying a new trial. Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

Bien & Jackson, and Anderson & Kaye, for Appellant.

C. L. Claflin, for Respondent.

ALLEN, J.—Action for damages on account of personal injuries. Findings and judgment for defendant. Appeal by the plaintiff from said judgment, and from the order denying a new trial.

Plaintiff was a passenger for hire upon defendant's stage-coach, such stage-coach having capacity for nine, but was carrying only six, passengers. The route being traversed was rough and mountainous; the stage was driven by a thoroughly competent and skilled man, and all of the appointments were in perfect condition. The stage thus driven was met by a ten-horse team upon this mountain road, and the driver of the stage undertook to pass the team by turning to the right. The evidence of Pritchard, the driver, is: "The place outside the road where I drove down was not bad looking from above. As far as I could see, it was a rocky ridge that went down and narrowed up. At the point where we turned in it hadn't been very bad only for the big loose boulders. Looking on down it got narrower and the hills broke off steep to the right, and the road was very abrupt on the left-hand side also until you got farther down. The embankment was formed by throwing loose rocks out of the road. The rut where I turned in was about eight or ten inches deep and the bank had a gradual slope toward it a distance of eight or ten feet. The slope was not steep, but was gradual and easy. . . . The ridge becomes narrower as you go down until it pinches out."

The defendant, called in his own behalf, testified, and was asked whether it was possible, by the exercise of care on the driver's part, to have driven the coach into the road at that point without tipping over; his answer was: "I don't know of any way that he could prevent it." When asked if, by the exercise of the highest degree of care, by watching everything in the road, the driver could "have driven that coach in there without turning over," defendant answered: "Well, I don't think he could." To the further question, "Do you think any man could drive that coach in there where he turned off from the road without turning it over?" defendant answered: "I don't think so." Again, he says: "Of course, I would try and be safe, but I might be turned over. I say I don't think it could be done with safety because I had as safe a man as ever drove on the road." And to the further question: "Then it was a matter of impossibility to have driven that coach around that cement wagon and gotten in again without turning over; that is a fact, is it not?" Answer: "It seems so." The driver further testified: "I knew that the ground at the side of the road was covered with loose stones and boulders as far down as I could see. . . . I discovered that fact at the time I drove down there, and knew it before. . . . A man might reach the road with an empty stage. He might do it one time in ten."

While the witness Pritchard stated that "the place outside the road where I drove down was not bad looking from above," the entire description of the road over which he was compelled to drive in turning out indicates that it was an exceedingly bad and dangerous point at which to undertake to leave the road. It is admitted that no notice was given to the passengers of the dangerous character of this particular turnout. It further appears from the testimony that after driving past the team, in an effort to turn back into the road, the right fore-wheel struck one of these boulders of which witness Pritchard speaks and upset the stage; that after the stage started to turn over plaintiff leaped therefrom and was caught and injured.

The court finds that there was no negligence upon the part of the defendant, although it makes no specific finding as to the danger to be apprehended at the point where the driver undertook to turn out of the road and pass the cement team. The court does find, however, and there is testimony in its

support, that the place where he undertook to turn back into the road after having passed the cement team was apparently a safe place.

It is insisted by the appellant that there is no evidence to support the finding that no negligence was attributed to the defendant. With this we are inclined to agree. The care which defendant, as a common carrier, owed to plaintiff was the utmost care. (*Treadwell* v. *Whittier*, 80 Cal. 588, [13 Am. St. Rep. 175, 22 Pac. 266].) The passenger was injured by an instrumentality used by defendant in the prosecution of his business, and the presumption is that it occurred by the negligence of the coachman. We find nothing in the evidence tending to rebut this presumption. "Moreover, where the driver of a coach approaches a place of particular danger to passengers, he is bound to warn them of the nature of the danger, to the end that they may choose whether they will run the risk of it or not." (Thompson's Carrier of Passengers, p. 240.) We think that the general tenor of the authorities cited by the appellant sustains the position that it was negligence upon the part of the driver, in view of the rough character of the turnout, which he must of necessity traverse in order to pass this wagon, in not giving the passengers notice of the danger apparent, that an opportunity might be offered them to alight and avoid the same. His omission in this regard was negligence. No contributory negligence is shown. Assuming as we do that the driver drove his coach into a dangerous place and exposed the passengers to peril, the act of the plaintiff in attempting to jump from the coach was not contributory negligence. It is said by our supreme court in *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482, [66 Pac. 734], that "even if, in bewilderment, he runs directly into the very danger which he fears, he is not in fault. The confusion of mind caused by such negligence is part of the injury inflicted by the negligent person." There is nothing in the evidence to indicate that the action of plaintiff in jumping from the stage contributed in any degree to its overturning, for the uncontradicted testimony is that the stage was overturning before he jumped.

In our opinion, the judgment and order should be reversed, and cause remanded for further proceedings; and it is so ordered.

Gray, P. J., and Smith, J., concurred.