[Civ. No. 836.   Third Appellate District.—September 21, 1911.]

## M. WANIOREK, Appellant, v. UNITED RAILROADS OF SAN FRANCISCO, a Corporation, Respondent.

NEGLIGENCE—BLOWING OUT CONTROLLER, AND FIRE ON ELECTRIC CAR—JUMP—INJURY — CONTRIBUTORY NEGLIGENCE—ERROR IN REFUSING INSTRUCTION.—In an action for injuries to a passenger ·on an electric car from the alleged negligence of the defendant, it is held, in view of the evidence, that the court prejudicially erred in refusing to instruct the jury, at plaintiff's request, to the effect that if they believe therefrom that, by reason of said negligence, the controller on said car blew up or caught fire, and that the same created in plaintiff's mind a reasonable apprehension of great peril or injury, and that in order to avoid the same, plaintiff jumped from the car while in motion, sustaining the injuries complained of, and that an ordinarily prudent and cautious person, under like conditions and circumstances, would have jumped off from the car, then "plaintiff was not guilty of contributory negligence, even though you also believe from the evidence that had he remained upon the car said plaintiff would not have been injured."

ID.—REFUSED INSTRUCTION BASED ON FAULT AND ESTOPPEL OF CARRIER. In theory of law the passenger in such case is not only not guilty of contributory negligence, but his error is deemed the natural and consequently the blameless consequence of the fault of the carrier. The rule of law proceeds on the theory that the carrier has produced the erroneous action of the passenger, and that it does not therefore lie in the mouth of the carrier to defend an action for damages on the ground of such erroneous action, thereby taking advantage of its own wrong.

ID.—PRESUMED NEGLIGENCE OF CARRIER.—When a controller upon a car of a street railway company blows out or burns out, the law presumes that such blowing or burning resulted from some defect in the controller or other appliances of the car; and in such case it devolves upon the company to show that such burning or blowing out did not result from any cause which the highest degree of care on its part could have prevented.

ID.—CONTRIBUTORY NEGLIGENCE A QUESTION OF FACT—DUTY OF COURT AS TO INSTRUCTION.—Upon the evidence, contributory negligence in jumping from the car was a question of fact; and the theory of the instruction asked being within the sanction of the law, and supported by substantial evidence, it was the duty of the court to direct the jury what should be the conclusion as to contributory negligence, in case they found the facts as recited in the instruction.

ID.—RIGHT OF EITHER PARTY TO APPROPRIATE INSTRUCTION.—Either party has a right to have an instruction based on his theory of the case, if there is any evidence to support it.

ID.—REFUSED INSTRUCTION NOT COVERED BY INSTRUCTIONS GIVEN.— The refused instruction, being supported by sufficient evidence, was not affected, nor was the omission to give it supplied, either by a general instruction defining contributory negligence in the abstract, or by a general instruction on that subject directing the jury to consider all of the facts and circumstances in the case existing at and prior to the time when plaintiff jumped from the car, or by an instruction presenting only the theory of the defense as to contributory negligence.

ID.—DIRECTION OF CONDUCTOR TO "JUMP FROM CAR."—Although a direction of the conductor to the plaintiff to jump from the car is not an issue under the pleadings, yet such direction, if given, was an additional circumstance to be considered by the jury in determining whether the plaintiff acted as a reasonable man, regardless of the question whether the conductor acted within the scope of his authority or not, in giving such direction.

ID.—ERROR IN ADMITTING EXPERT EVIDENCE AGAINST AUTHORITY OF CONDUCTOR.—The court erred in admitting expert or opinion evidence of a witness as to the want of authority of the conductor to give direction to the plaintiff to jump from the car.

ID.—PROPER WAY TO SHOW EXTENT OF AGENT'S AUTHORITY.—The proper way to show the extent of the agent's authority is to offer evidence of the orders or directions given to him, or of the rules adopted for his guidance.

ID.—INVASION OF PROVINCE OF JURY.—Without such proper evidence it is a palpable invasion of the province of the jury to ask a witness whether a certain act is within the scope of the agent's authority; and such invasion cannot be justified upon the theory that the witness was an expert upon the subject, as the duty of employees is not a matter of expert testimony.

APPEAL from an order of the Superior Court of the City and County of San Francisco, denying a new trial. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan, and Theo. J. Roche, for Appellant.

A. A. Moore, Stanley Moore, and Wm. M. Cannon, for Respondent.

BURNETT, J.—The action was for damages for personal injuries and defendant had the verdict. Plaintiff appeals from the order denying his motion for a new trial. The facts deemed essential for a proper understanding of the case will appear as we proceed.

Among the instructions requested by plaintiff and refused by the court was the following: "If you believe from the evidence that on the twelfth day of February, 1903, and while plaintiff was being transported as a passenger on said car of said defendant, as alleged in plaintiff's complaint, by reason of the negligence of the defendant, the controller on said car blew up or caught fire, and that the blowing up or catching on fire of said controller created in the mind of said plaintiff a reasonable apprehension of great peril or injury, and that by reason thereof, and in order to avoid such anticipated peril or injury, plaintiff jumped from said car, while said car was in motion, sustaining the injuries complained of, and that an ordinarily prudent and cautious person, under like conditions and circumstances, would have jumped off and from said car, then I instruct you that under such circumstances plaintiff was not guilty of contributory negligence in jumping off and from said car, even though you also believe from the evidence that had he remained upon said car, said plaintiff would not have been injured." Whether prejudicial error was committed by the refusal to give said instruction depends upon the proper solution of the following questions: Does said proposed instruction embody an authenticated principle of law? Does the hypothesis contained therein find substantial support in the evidence? If the foregoing be answered in the affirmative, then, could the court legally decline to give the instruction and was the refusal without prejudice by reason of other instructions which were given to the jury? Of these, the last only can be the subject of serious controversy.

As a proposition of law, indeed, the instruction is hardly questioned by respondent. It presents a hypothetical situation of peril to a passenger produced by the negligence of the carrier and which creates in that passenger's mind a reasonable apprehension of danger; and upon the basis of the passenger acting as a reasonably prudent man in his effort

to escape the danger is predicated the absence of contributory negligence. This is in harmony, we may say, with the test universally prescribed by the authorities. The only possible objection to it as a principle of law arises from the suggestion that the act of jumping from a moving car is irreconcilable with the theory of prudent and reasonable conduct. But the authorities are agreed that the circumstances may be such as to justify and even demand this perilous step, and they positively affirm the doctrine of the instruction, many of them stating the rule even more favorably for the injured person.

In Thompson on Negligence, section 2927, it is said: "It is a principle of obvious justice that one person cannot impute negligence to the act of another, which act has been induced by the negligence or wrongful act or omission of the former; and this rule applied as between carriers and passengers. It follows that where the passenger acts erroneously under a sudden impulse of fear produced by the negligence of the carrier or his servants, in consequence of which erroneous action the passenger is killed or injured, whereas he would have escaped unharmed but for the same, there may be a recovery of damages; for here, though the error of the passenger is nearer in time to the hurt which he receives than is the negligence of the carrier, yet in a juridical sense it is more remote. Perhaps it is a better statement of this doctrine to say that in theory of law the passenger is not guilty of contributory negligence at all, but that his error is the natural, and consequently the blameless, consequence of the fault of the carrier. The real rule proceeds upon the theory that the misconduct of the carrier has produced the erroneous action of the passenger, and that it does not therefore lie in the mouth of the carrier to defend an action for damages on the ground of such erroneous action, thereby taking advantage of his own wrong."

Among the illustrations of the rule given in section 2978 by the learned author is one in the following language: "So, where a passenger upon a railway train is, in consequence of the negligent and unskillful operation of its train by the company, placed in a situation so perilous as to render it seemingly prudent for him to leap from the train, as where he sees another train rapidly approaching from the rear on the same track, and he so leaps and is injured, he is entitled

to recover damages, although he would not have been hurt if he had remained on the train.'' Many cases in support of the doctrine of said text are cited by appellant. Of these we refer to the following: *Robinson* v. *Western Pac. R. R. Co.*, 48 Cal. 421; *Lawrence* v. *Green*, 70 Cal. 417, [59 Am. Rep. 428, 11 Pac. 750]; *Green* v. *Pacific Lumber Co.*, 130 Cal. 435, [62 Pac. 747]; *Schneider* v. *Market St. R. Co.*, 134 Cal. 482, [66 Pac. 734]; *Dinnigan* v. *Peterson*, 3 Cal. App. 765, [87 Pac. 218]; *St. Louis & S. F. R. Co.* v. *Murray*, 55 Ark. 248, [29 Am. St. Rep. 32, 18 S. W. 50, 16 L. R. A. 787]; *Firebaugh* v. *Seattle etc. Co.*, 40 Wash. 658, [111 Am. St. Rep. 990, 82 Pac. 995, 2 L. R. A., N. S., 836]; *Baber* v. *Broadway & S. A. R. Co.*, 10 Misc. Rep. 109, [30 N. Y. Supp. 930]; *St. Louis etc. R. Co.* v. *Maddry*, 57 Ark. 306, [21 S. W. 472]; *Budd* v. *United Carriage Co.*, 25 Or. 314, [35 Pac. 660, 27 L. R. A. 279]; *Buel* v. *New York Cent. R. R. Co.*, 31 N. Y. 314, [88 Am. Dec. 271]. See, also, *Braly* v. *Fresno City Ry. Co.*, 9 Cal. App. 417, [99 Pac. 400].

In the case of *Green* v. *Pacific Lumber Co.*, 130 Cal. 435, [62 Pac. 747], a lady passenger had jumped with other passengers from a train going at the rate of from eight to ten miles an hour, under an apprehension of great danger from collision with a freight train, discovered to be rapidly approaching from around a curve. Recovery was opposed on the ground of contributory negligence. In discussing the question our supreme court said, through the late Mr. Justice Garoutte: ''If the danger of collision is hanging right over a passenger's head, the proprieties and niceties usually demanded of passengers in alighting from trains need not be observed to their full extent. Under these circumstances a person does not stand and ponder upon the order of his going, but goes at once. A safe or unsafe spot may be chosen upon which to alight from the car. If the spot be unsafe and dangerous, that fact, of itself, will not necessarily defeat a right of recovery even though a safe and secure spot was at hand and equally ready of access,'' and it was held to be ''essentially a question of fact for the jury whether or not plaintiff was justified, in view of all the surrounding conditions, in jumping from the train.''

The Firebaugh case was very much like the one at bar. There, as here, a passenger, being placed in danger in con-

sequence of the blowing out of the controller in an electric
trolley car, jumped from the car, with a view of saving him-
self, and was thereby injured. The supreme court of Wash-
ington upheld the action of the lower court in giving the
following instruction: ''When a controller upon a car of a
street railway company blows out or burns out, the law pre-
sumes that such blowing or burning resulted from some
defect of the controller or other appliances of the car, and
in such a case it devolves upon the company to show that
such burning or blowing out did not result from any cause
which the highest degree of care on its part could have
prevented.'' It was also held that plaintiff could not prop-
erly be charged with contributory negligence for jumping
from the car, it being said: ''We think, upon an examination
of the cases, that they do not in any manner sustain appel-
lant's contention, and that, when it is conceded, as it must
be from an examination of the testimony in this case, that
the plaintiff was warranted in retreating from the peril which
threatened him, and when in fact he would have been guilty
of contributory negligence if he had not attempted to save
himself by retreating, there is no equitable rule which could
deprive him, by reason of such cautionary action on his
part, from pleading negligence on the part of the carrier.''

In *Baber* v. *Broadway & S. A. R. Co.*, 10 Misc. Rep. 109,
[30 N. Y. Supp. 931], it is said: ''Contributory negligence
was not predicable of the fact that the plaintiff leaped from
the moving car. . . . Neither is error of judgment in a sud-
den and instinctive effort to escape impending danger to be
accepted as a proximate cause of resultant injury.''

In the case of *St. Louis etc. R. Co.* v. *Maddry,* 57 Ark.
306, [21 S. W. 472], also, the complaining party, who was
a passenger, attempted to escape from the car. The court
said: ''Self-preservation dictated flight, and all the passen-
gers attempted it. In the attempt Maddry was killed, while
others reached places of safety, and one, who was caught in
the car, strangely enough survived its wreck. But there is
nothing to show that Maddry's fate was due to any careless,
negligent or incautious act of his. It certainly did not ap-
pear safe, and was not incumbent upon him to keep his seat
in the car about to be wrecked.''

The rule is well stated by the supreme court of Oregon, in the Budd case, *supra*, as follows: ''Whether the plaintiff was contributorily negligent in jumping from the carriage, under the circumstances, depends upon whether her act was precipitate or rash, or such as a person of ordinary prudence might do. The evidence shows that the plaintiff was in a closed coupe, that the horses were running and kicking, and that the driver, who appeared to be frightened and unable to control them, was calling excitedly to the plaintiff and her daughter, 'For God's sake, jump out.' These circumstances showed presumptively that the negligence of defendant had placed the plaintiff in a situation of imminent peril. In such case the law does not require of the passenger the exercise of all the presence of mind and care of a prudent man; and if the plaintiff, in endeavoring to escape from such danger, either by following the directions of the driver or the dictates of her own judgment, acted as a person of ordinary prudence would have done under similar circumstances, she was not negligent. Hence whether she acted negligently or not was a question of fact to be submitted to the jury.''

So in the Buel case the New York court of appeal says: ''But it is insisted that, although the defendant's negligence caused the injury complained of, the plaintiff should have been nonsuited, because his careless conduct contributed to produce it. The misconduct alluded to is, that, upon seeing the approaching train, and men jumping from other cars, to avoid the impending danger, he left his seat, and rushed to the forward door of the car, with the view of escaping himself, and had stepped one foot upon the platform at the instant of the collision. This, it is said, was such negligence as to have required the court to nonsuit the plaintiff. That is, as a matter of law, a passenger in a railroad car, who sees that he is placed in peril by the culpable conduct of the managers of the road, and judges correctly that a collision is inevitable, is guilty of a wrong, if he does not control the instinct of self-preservation and sit still and take the chances of safety. This is not the law. Seeing the danger in which he was placed, the plaintiff was justifiable in seeking to escape injury by leaving the car.'' The proposed instruction here, it must be remembered, contains no direction to the jury to

find that plaintiff was not guilty of contributory negligence if they believed that he was under a reasonable apprehension of danger when he jumped from the car, but it requires that the jury shall go further in order to acquit him of contributory negligence and hold that, in attempting to escape from the danger, he acted as a reasonably prudent man would under the same circumstances.

As a basis in the evidence for the instruction, we refer to the following: Plaintiff's witness, Camencind, testified: "It was a loud report. I looked toward the place where it came from and saw a light, the sparks and lightning. This kept on for some time. I saw nothing else but fire—I saw the motorman. The fire was around the controller and around the motorman. It was a large flame and was all around the motorman. The conductor was there in the front end of the car. He came running through the car and told us to jump off of the car. He said 'Jump for your lives, get off the car.' At the time I jumped the car was going at a terrific speed." The plaintiff also testified to the same effect, and he declared that he jumped off the car "because it was the rule of the conductor and then there was danger that the car might get all on fire, and I was the first time in an accident, or the car may come out of all that and fall over and kill me in any way and maybe the whole people," and that he believed it was the best thing he could do under the circumstances as they existed.

The theory of the instruction being, therefore, within the sanction of the law and supported by substantial evidence, it was the duty of the court to direct the jury what should be their conclusion as to contributory negligence in case they found the facts as recited in said instruction.

"Either party has a right to have an instruction given to the jury based upon his theory of the case, if there is any evidence to support it." (*Buckley* v. *Silverberg,* 113 Cal. 673, [45 Pac. 804]; *People* v. *Shemple,* 4 Cal. App. 120, [87 Pac. 227].)

The remaining question is, whether the ground was covered by instructions which were given. The better course is for the court to give a proposed instruction where there is no valid objection to it (*People* v. *Lachanais,* 32 Cal. 436); but where the substance of an instruction refused is fairly em-

braced and expressed in those given no injury is presumed
to have resulted.   (*Merguire* v. *O'Donnell,* 103 Cal. 50, [36
Pac. 1033] ; *People* v. *Schmidt,* 106 Cal. 48, [39 Pac. 204].)
The only instructions that could possibly be claimed to sup-
ply the omission were as follows: No. 5.   "Contributory neg-
ligence of a passenger, in its legal signification, is such an
act or omission on the part of a passenger amounting to want
of ordinary care, as, concurring or co-operating with the neg-
ligent act of the defendant, is a proximate cause or occasion
of the injury to the passenger complained of.   To constitute
contributory negligence on the part of a passenger, there
must be a want of ordinary care on the part of the passenger,
and a proximate connection between that and the injury sus-
tained by the passenger."   No. 7.   "You are instructed that
in considering the question as to whether plaintiff, M. Wani-
orek, was guilty of contributory negligence in jumping off
the car upon which he was riding as a passenger on the
twelfth day of February, 1903, you should take into consid-
eration all of the conditions and circumstances, as proven,
existing at and immediately prior to the time he so jumped,
and the situation as it was then presented to his mind, as
established by the evidence."   No. 19.   "If you find from
the evidence that the plaintiff, in jumping from the car in
question (if you find that he did jump therefrom) did not
act as a reasonable and prudent man would have acted under
the same circumstances, then I instruct you that plaintiff
was guilty of contributory negligence, and your verdict must
be in favor of the United Railroads of San Francisco."   The
first of these, "No. 5," it is apparent, is a mere abstract defini-
tion of contributory negligence and it does not reach the ques-
tion under consideration.   "No. 7" comes nearer the point.
"All the conditions and circumstances existing at and imme-
diately prior to the time he so jumped" comprehends, of
course, in a general way, every circumstance referred to in
said proposed instruction as occurring before the accident;
but said instruction, "No. 7," does not purport to present
plaintiff's theory of the case.   It is a mere general instruc-
tion, directing the jury to consider all the facts and circum-
stances proven in the case.   It might be given just as well
for the defendant as for the plaintiff and, by changing the

language describing the accident itself so as to conform to each particular case, it might very properly be given in any damage suit whatever. In fact, it contains a mere legal platitude and directs the jury to do something which every intelligent juror, in the absence of any such instructions, understands to be his duty.

That the omission was not supplied by instruction "No. 19" is at once apparent. Said instruction presented the theory of defendant to the effect that plaintiff, in jumping from the car, did not act as a reasonably prudent and cautious person. Some astute juror might get from that the impression that the converse was equally binding, but it was just as important to present the affirmative as well as the negative phase of the legal proposition.

Plaintiff's whole case depended upon the theory embodied in said proposed instruction, and we are left to conjecture whether the jury accepted the facts as recited in the instruction and drew the erroneous inference that plaintiff was guilty of contributory negligence and, therefore, not entitled to recover, or whether they rejected the theory as to some or all of the facts and therefore reached a legal conclusion as to plaintiff's culpability. The other feature relative to the result if he had remained in the car, was also a matter of importance to call to the attention of the jury. There is no doubt he would have escaped uninjured if he had not jumped from the car, and from this circumstance alone, in the absence of a caution to the contrary, the jury were likely to conclude that he acted in a precipitate and unreasonable manner.

It may be, as suggested by respondent, that the jury found all the facts in favor of defendant's theory. It is beyond controversy that they had the legal right to do so, and if they believed the testimony of defendant's witnesses it was their bounden duty to so find. But respondent is entirely at fault in the contention that, for this reason, any error in ruling upon evidence or in giving or refusing instructions is without prejudice. There were no special findings, and hence we do not know what theory as to the facts was adopted by the jury. They may have found for defendant because of an erroneous view as to the law of contributory negligence, and this might have been corrected had the proposed instruction

been given.   Of course, if there had been no evidence in support of plaintiff's theory a different question would be presented.

Appellant devotes much space to a learned discussion of the proposition that: "Common carriers of passengers are responsible for the negligent or willful acts of their employees, done within the scope of their employment, whether directly authorized or not; Waniorek, therefore, was justified in acting upon the suggestion or direction of the motorman or conductor to jump for his life."   But, conceding that appellant states the law correctly, it is difficult to perceive how it can be of any advantage to him on this appeal.   There was no proposed instruction embodying said principle nor was the complaint, indeed, framed upon the theory that plaintiff, in jumping from the car, acted in obedience to the direction of defendant's agents given in the course of their employment. Likewise, since the evidence was strikingly conflicting as to whether any such direction was given, the verdict of the jury cannot be said to be against law, even upon the hypothesis that the motorman or conductor was authorized to direct the passenger to "jump for his life."   The fact is, as conceded by appellant in his closing brief, that, under the pleadings, the question of whether the agent acted within the scope of his authority was entirely immaterial.   The true position, as we conceive it, is that the direction, if given, was an additional circumstance to be considered by the jury in determining whether the plaintiff acted as a reasonable man.   Since the motorman or conductor was presumably better qualified than plaintiff to judge of the exigency of the situation, the passenger would naturally rely largely upon the judgment of the employee, and it is apparent that if such direction were actually given it would have an important bearing upon the question whether as a reasonable man he was justified in jumping from the car.

The only other contention of appellant is that the court erred in admitting evidence of the witness Allen as to the duty or authority of the motorman and conductor.   The questions and answers in this connection that we deem important are as follows: "Q.   Has the motorman any power or authority, or is it his duty in any way, to order anyone to jump from the car while it is in motion?   A.   No, sir; it

is not. Q. Even in the case of a sudden emergency, such as I have suggested, has he any such power? A. He has not. Q. Has the conductor any power or authority in that regard? A. Not at all.'' To these questions the general objection was made and also that each of them called for the conclusion of the witness. As already stated, the questions related to immaterial matter. It was not charged in the complaint as an act of negligence, or at all, that plaintiff was directed to jump from the car, and, therefore, said directions, if given, were not made the basis for recovery and they could only be considered as affecting the reasonableness of the conduct of plaintiff. But for this purpose it is clear that the question whether said directions were authorized or not was a matter of indifference, especially since plaintiff had no knowledge as to the extent of the agent's authority. But the question called for the opinion of the witness, and upon this ground, also, the objection, we think, should have been sustained. Manifestly, the proper way to show the extent of the agent's authority is to offer evidence of the orders or directions given him or of the rules adopted for his guidance by the principal. If there were no such evidence available, it would be proper to describe the work performed by the agent in the course of his employment, bringing it home to the knowledge and implied acquiescence of the principal, or, in the language of Mecham, ''tracing it to some word or act of the alleged principal.'' But without any such showing it is a palpable invasion of the province of the jury to ask a witness whether a certain act is within the scope of the agent's authority; neither can it be justified upon the theory that the witness was an expert upon the subject, as the duty of these employees is not a matter of expert testimony.

In *Central R. R. Co.* v. *De Bray,* 71 Ga. 406, the plaintiff had been directed by the conductor to get off the train while in motion. It is said in the opinion: ''The court refused to allow W. A. Tinsley and R. Schmidt to testify that if one obeys the order of a conductor and gets off of a moving train, 'he does it at his own risk.' To allow testimony of this kind would be to allow a witness to testify what the law is. Witnesses must testify to facts, and the court is responsible for the law.'' It was also held that the court below properly rejected the offer to prove by one A. J. White that ''no con-

ductor or other officer had the right to order an employee to get off or on a moving train, and if such orders were given, the employee could not be required to obey the order,'' on the ground that it was immaterial and irrelevant and also not the subject of expert testimony.

*McIsaac* v. *Northampton Electric Co.,* 172 Mass. 89, [70 Am. St. Rep. 244, 51 N. E. 524], was an action by a lineman employed by an electric lighting company to recover damages for injuries sustained by the breaking and falling down of a pole carrying the wires. It was sought to charge the plaintiff with contributory negligence in failing to inspect the pole before going upon it. In striking out some of the testimony in reference to the duty of inspection, the court said: ''The words, *'It is not the lineman's business to do it,'* in Dorsey's answer were rightly stricken out. To say nothing of other objections, they were not responsive to the question. The question whether it was a part of the work of a lineman to make that inspection was properly ruled out. It called for an opinion of the witness in regard to the legal effect of a contract.''

It was held in *Krueger* v. *Chicago etc. Ry. Co.,* 84 Mo. App. 366, that it was improper to ask a brakeman the question whether certain acts were in the line of his duties, but that the proper course to follow would be to state what he had been directed to do or that he had been accustomed to perform certain acts and how long he had been accustomed to perform them.

In *Providence Tool Co.* v. *U. S. Mfg. Co.,* 120 Mass. 35, it was held improper to ask a treasurer whether, as treasurer, he had authority to make and execute a promissory note, the court stating that ''All that could properly be obtained from him were the facts by which the inference of authority was to be supported or repelled and it was for the counsel to argue, and for the jury to find, under the instructions of the court, whether the facts so given proved that he had the authority which he denied.''

In *Short Mountain Coal Co.* v. *Hardy,* 114 Mass. 197, it was held improper to ask whether an agent had authority to make a sale.

It is, no doubt, true, as stated in *Kiesel* v. *Sun Ins. Co.,* 88 Fed. 243, [31 C. C. A. 515], that ''The general rule that facts,

and not conclusions, should be stated, is a wise and salutary one and cannot be too strictly followed. It tends to prevent fraud and perjury, and is one of the strongest safeguards of personal liberty and private rights. Whenever it is doubtful whether a case falls under the rule or under one of its exceptions, the wise course is to place it under the rule.''

Other cases, cited by appellant, discussing and illustrating the same principle are the following: *Kendall Co.* v. *Baine,* 46 Mo. App. 588; *Muff* v. *Wabash etc. Ry. Co.,* 22 Mo. App. 588; *Madden* v. *Missouri Pac. Ry. Co.,* 50 Mo. App. 673; *Fogel* v. *San Francisco etc. Ry. Co.* (Cal.), 42 Pac. 566; *People* v. *Westlake,* 62 Cal. 303; *Conner* v. *Stanley,* 67 Cal. 315, [7 Pac. 723]; *Sappenfield* v. *Main St. R. R. Co.,* 91 Cal. 59, [57 Pac. 590]; *Kauffman* v. *Maier,* 94 Cal. 281, [29 Pac. 481, 18 L. R. A. 124]; *Kerrigan* v. *Market St. R. Co.,* 138 Cal. 506, [71 Pac. 621]; *Luman* v. *Golden Ancient Channel M. Co.,* 140 Cal. 708, [74 Pac. 307].

It is evident that the testimony thus admitted may have had an important bearing upon the verdict of the jury. They may have believed that the direction was given to plaintiff as claimed by him, but have concluded that he had no right to regard or be influenced by it for the reason that the act was beyond the scope of the employees' authority. We cannot tell, of course, what weight was given by the jury to the testimony or whether without it their verdict would have been for defendant. It is sufficient to say that, in view of the probability that such testimony influenced the verdict, the ruling of the court must be held to be prejudicial.

Respondent asks: ''When a master is sought to be held liable for the act of his servant, is he precluded from showing the facts concerning the employment and from asserting his defense that it was not within the scope of the servant's authority?'' As we have already seen, plaintiff has not sought to hold the defendant liable for the said direction alleged to have been given to plaintiff; but if such were the case there is no doubt that the facts concerning the employment could be shown. But the opinion of a witness is not legal evidence of these facts.

No fault can be found with the authorities cited by respondent. For instance, quotation is made from Mecham on Agency, section 106, as follows: ''It is impossible to lay down

any inflexible rule by which it can be determined what evidence shall be sufficient to establish an agency in any given case, but it may be said in general terms that whatever evidence has a tendency to prove the agency is admissible, even though it be not full and satisfactory, as it is the province of the jury to pass upon it.'' We have examined the cases cited by respondent but find that none of them involves the same situation as is presented here. They contain, however, some interesting reflections upon the subject of agency and may be consulted with profit. The cases are: *Howe Machine Co.* v. *Clark,* 15 Kan. 492; *Piercy* v. *Hedrick,* 2 W. Va. 458, [98 Am. Dec. 774] ; *Van Sickle* v. *Keith,* 88 Iowa, 9, [55 N. W. 42] ; *O'Leary* v. *German American Ins. Co. of New York,* 100 Iowa, 390, [69 N. W. 686] ; *Reeves & Co.* v. *Breuning,* 13 N. D. 157, [100 N. W. 241] ; *Brunner* v. *American Telegraph & Telephone Co.,* 151 Pa. 447, [25 Atl. 29] ; *Moe* v. *Job,* 1 N. D. 140, [45 N. W. 700].

For the foregoing reasons we think plaintiff is entitled to a new trial and the order is therefore reversed.

Hart, J., and Chipman, P. J., concurred.