## Petruska v. Packard Motor Car Company.

*Negligence—Automobile—Principal and agent—Negligence of agent.*

1. Where one is acting in the furtherance of another's business, it is but just to hold him responsible who has placed the negligent employee in a position to injure an innocent third person.

2. Where a company manufacturing automobiles accepts its own used automobile at a valuation in part payment for a new one, although it does not allow its sales agents any commissions on such valuation in a sale, but tolerates a practice upon the part of the agents to sell the used automobiles to other parties so as to effect a sale, the company will be liable to a third party who is injured by the negligence of the company's agent to whom the car has been delivered by its owner to sell.

Motion for judgment *non obstante veredicto.* C. P. No. 2, Phila. Co., March T., 1920, No. 4841.

*W. I. Stanton,* for plaintiffs; *R. B. Evans,* for defendant.

GORDON, J., June 13, 1923.—This is an action by Genevieve Petruska, a minor, and Frank Petruska, her father, against the Packard Motor Car Company of Philadelphia for damages for injuries sustained by the minor plaintiff as a consequence of being run into by an automobile on Market Street, between Eighth and Ninth Streets, in this city. The jury rendered verdicts for the plaintiffs, and the case is now before the court on a motion for judgment *non obstante veredicto.*

The question raised by this motion is one of agency. In considering it, we must accept all of the testimony and the inferences therefrom which are favorable to the plaintiffs, and reject all that are unfavorable. Viewing the evidence in this light, we find the following facts upon the subject of agency:

Gustave and Walter Muller were the joint owners of a Packard twin-six automobile. They were approached by Louis H. McGuckin, a salesman in the employ of the defendant company, who opened negotiations to sell them two light-six Packard automobiles. The Mullers were willing to buy, but informed Mr. McGuckin that they would have first to dispose of the machine which they jointly owned. McGuckin was paid by the defendant company on a commission basis, and by the terms of his employment he received a commission upon the amount of cash only which the company received from the sale of an automobile. It was the practice of the defendant company in selling new cars to accept used or second-hand ones at an agreed price as part payment for new cars. When this was done, the salesman of a new car would receive a commission only upon the amount of cash which the parties paid in the transaction. It will be readily seen, therefore, that it was to the personal advantage of the defendant's salesman to induce prospective purchasers of new machines to sell their old cars in the open market rather than to trade them in on account of new purchases. By so doing, the salesman would receive a larger commission, the entire transaction thus being in cash. For this reason, McGuckin offered to sell the Mullers' old car for them "on the outside" rather than to have his company accept the car in trade. The Mullers agreed to this, and on the day of the accident delivered their automobile to McGuckin for the purpose of showing it to a prospective purchaser. While McGuckin was operating the automobile on this errand, the accident occurred which is the basis of this suit.

There was evidence to the effect that while the defendant company did not directly authorize this practice of their salesmen of selling customers' old automobiles to third persons rather than having them turned into the company in trade for new cars, it knew of the practice, permitted it and under-

3 D. & C.

took to control it to the extent at least of forbidding its salesmen to sell cars so secured to a class of second-hand automobile dealers which it characterized as "gyps."

The plaintiffs contend that, in attempting to sell the Mullers' automobile "on the outside," McGuckin was acting in the interest of the defendant and in the furtherance of its business, that he was well within the apparent scope of his agency, and that the defendant is, therefore, liable for his negligent acts. The trial court left the question of whether McGuckin was then acting within the apparent scope of his agency as a question of fact to the jury, which found in favor of agency. The defendant contends that there was no evidence to support this finding, and that it was entitled to binding instructions at the trial.

The question of agency thus raised is by no means free from difficulty. There can be little doubt that McGuckin's personal motive in attempting to sell the Mullers' automobile to a stranger was to benefit himself financially. He was not directly authorized by his employer to do so, and, except as the sale of it might promote the purchase of two new automobiles, the defendant company was not directly benefited by this intermediate transaction. On the other hand, this practice of its employees was well known to and tolerated by the defendant, and was in some degree controlled by its orders. It would seem, therefore, that the practice of selling customers' cars "on the outside" was an ordinary and natural incident of the business of their salesmen, and that it was to some extent within the contemplation of the defendant and its salesmen as an act likely to be performed in the conduct of the defendant's business. This is enough to carry the case to the jury on the question of agency.

In Blaker *v.* The Philadelphia Electric Co., 60 Pa. Superior Ct. 56, a chauffeur of the defendant, while returning the defendant's car to its garage, was compelled to stop and change his tire in the rain. His clothes became wet, and instead of returning to the garage immediately, he drove the machine to his home in another part of the city, had his supper, changed his clothes and started to return to the garage, where he had work to do preparatory to his employment in the morning. Upon returning to the garage, he went out of his way several squares to get some cigars, and while on this mission struck the plaintiff and injured him. Discussing the question of agency, Mr. Justice Kephart said: "Each case must to a great extent stand upon its individual facts, and where the evidence is such that an inference of employment may be drawn from it, the case is for the jury. 'For all acts done by the servant in obedience to the express orders or directions of the master, or in the execution of the master's business within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, and considering the nature of the services required, the instructions given and the circumstances under which the act was done, the master is responsible.'"

In 2 Mechem on Agency (2nd ed.), § 1879, the principle is thus laid down: "The utmost that can ordinarily be said is that a servant is acting within the course of his employment when he is engaged in doing, for his master, either the act consciously and specifically directed, or any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act, or a natural, direct and logical result of it. If, in doing such an act, the servant acts negligently, that is negligence within the course of the employment."

The case in this State nearest upon its facts to the case at bar that has been called to our attention is Guinney *v.* Hand et al., 153 Pa. 404. There,

the driver of the defendant's beer wagon had unloaded a barrel of porter and delivered it to a customer's saloon. The driver undertook to tap the barrel as he had been instructed to do for all his employer's customers. In doing so, he broke the faucet, and the saloon-keeper gave him money and asked him to go to a street some distance off and buy a new faucet. While on this errand, the plaintiff was injured by being run into by the defendant's beer wagon. The lower court left it to the jury to say whether the driver was acting within the scope of his employment at the time of the accident, and the Supreme Court sustained a verdict in favor of the plaintiff.

In our opinion, there was sufficient evidence in the case at bar for the jury to find that the defendant company knew and assented to its salesmen's practice of selling the cars owned by prospective customers to third persons; that it undertook to regulate that practice, at least to the extent of preventing its cars from falling into the hands of "gyps;" that the immediate object of McGuckin's act was to bring about the sale for his employer of two automobiles (thereby benefiting himself), and that, in so doing, he was acting within the reasonably contemplated scope of his employment. The desire, altogether proper on the part of the defendant company, to sell its products prompted it to hold McGuckin forth as its agent to do all things necessary to effect a sale. The defendant placed this agent in a position to do the act which resulted in the accident and anticipated this act by its restriction of the class to which such a sale could be made. The fact that the automobile involved in the accident was not the property of the defendant is not material. Ownership of the instrumentality by which an injury is inflicted is not the controlling basis of liability. Negligence and the interest which the principal has in the act of his agent is the basis. When one is acting in the furtherance of another's business, it is but just to hold him responsible who has placed the negligent employee in a position to injure an innocent third person.

The finding of the jury was not wholly unsupported by the evidence, and the motion for judgment *non obstante veredicto* is, therefore, overruled.