[Civ. No. 2759.    Third Appellate District.—May 10, 1924.]

## C. F. PHILLIPS, Appellant, v. HOBBS–PARSONS COM-PANY (a Corporation), Respondent.

[1] Negligence — Automobile Collision — Personal Injuries—Ac-tion for Damages—Unlighted Automobile—Time of Accident— Evidence.—In an action for damages for personal injuries sus-tained by plaintiff when, as alleged by plaintiff, defendant's auto-truck, which had been parked and which had no lighted lamps, backed into plaintiff's machine, which was proceeding along the street, the evidence being uncertain as to whether the collision occurred within a half hour after sunset or after, and it being such that there may be some ground for the theory that, upon the question as to the time of the accident, there was some conflict in the evidence, it was for the jury to determine the time, either with some degree of exactness or at least approximately, and it cannot be said that the defendant, in so far as is concerned its failure to carry lighted lamps on its truck at the time of the accident, was guilty of negligence *per se*.

[2] Id.—Testimony of Witness—Juries and Jurors.—A jury is not bound or compelled to accept the testimony of any witness as conclusive upon the fact or facts to which he testifies.

[3] Id.—Credibility of Witnesses—Juries and Jurors.—The triers of fact are always the exclusive judges of the credibility of any witness testifying before them, and, while they must start out with the presumption that the witness intends to and does speak the truth, still such presumption may be overcome by the manner in which he has testified, by the character of his testimony, or by evidence impeaching his character for truth, honesty and in-tegrity, or by contradictory evidence.

[4] Id.—Water on Windshield—Effect upon Vision—Matters of Common Knowledge.—It is a matter of common knowledge that, when there is water on a glass windshield of an automobile, the vision of one attempting to look through it becomes so ob-scured as to make it very difficult, even to those having normal

1. Validity and construction of regulations as to lights on auto-mobiles, notes, Ann. Cas. 1918D, 847; L. R. A. 1918B, 828. See, also, 3 Cal. Jur. 788.

Existence and condition of lights on automobile as affecting right of operator or owner to recover for negligence, note, 14 A. L. R. 794. See, also, 3 Cal. Jur. 1013; 2 R. C. L. 1192.

3. Credibility of witnesses, note, 86 Am. Dec. 328. See, also, 28 R. C. L. 658.

4. Impairment of driver's view through windshield as effecting lia-bility for automobile accident, note, 10 A. L. R. 299.

eyesight, to discern distinctly an object even a short distance before him and the vision naturally will become the more obscured when the water is falling upon and trickling down and over the glass; and this must be particularly true as to the windshield of an automobile while the machine is moving at the rate of twelve to fifteen miles an hour. ·

[5] ID.—CONTRIBUTORY NEGLIGENCE—EVIDENCE—APPEAL.—In such action, in view of the record it does not lie in the mouth of the court of review either to hold that the evidence, as a matter of law, discloses that the direct cause of the accident was the negligence of the defendant, or likewise to hold that, even conceding that the defendant was guilty of negligence which was, in a measure, responsible for the injuries of the plaintiff, the plaintiff himself was wholly free from blame or not guilty of negligence without which the accident and its consequences would not have occurred.

[6] ID.—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.—In such action, the law is that "negligence on the part of the plaintiff amounting to a want of ordinary care which, operating concurrently with the negligence of the defendant, contributes proximately to plaintiff's injuries, will prevent a recovery in this action by plaintiff, whether or not defendant, by the exercise of ordinary care, could have guarded against it."

[7] ID.—VIOLATIONS OF MOTOR VEHICLE ACT—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.—In such action, although certain instructions to the effect that if the jury "find from the evidence that the plaintiff violated any of" certain rules prescribed by the Motor Vehicle Act, "and that such violation contributed to the injuries complained of by plaintiff, you must find for the defendant," do not accurately state the rule, because of omitting the word "proximately" before the word "contributed," the error in giving said instructions was fully cured by a correct statement of the rule in several other instructions embodied in the court's charge, and particularly by the given instruction that "Contributory negligence is defined as that negligence of plaintiff which contributes to his injuries *and without which said injuries would not have occurred.*"

---

(1) 28 Cyc., p. 48.   (2) 23 C. J., p. 38, sec. 1779; 40 Cyc., p. 2593.   (3) 40 Cyc., pp. 2255, 2555, 2586, 2593, 2594.   (4) 23 C. J., p. 145, sec. 1966 (1926 Anno.); 28 Cyc., p. 47.   (5) 28 Cyc., p. 49.   (6) 29 Cyc., pp. 512, 526, 527, 531, 655.   (7) 28 Cyc., p. 49; 38 Cyc., p. 1786.

6.   General rules as to contributory negligence, note, 55 Am. Dec. 666. See, also, 19 Cal. Jur. 644; 20 R. C. L. 136.

7.   See 2 Cal. Jur. 1026; 2 R. C. L. 256; 14 R. C. L. 817.

APPEAL from a judgment of the Superior Court of Fresno County.  S. L. Strother, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Harris & Hayhurst for Appellant.

George Cosgrave and Lopez & Lovejoy for Respondent.

HART, J.—This is an action for damages for personal injuries.  The cause was tried by a jury and a verdict returned for the defendant.  A motion for a new trial was made and denied.

The plaintiff appeals from the judgment entered upon the verdict.

On the fifteenth day of November, 1920, near the hour of 5 o'clock P. M., the plaintiff, while driving a Ford roadster in a southerly direction along the west side of J Street, a public thoroughfare in the city of Fresno, an auto-truck, owned by the defendant, and driven by one Ray Summers, an employee of the defendant, was, so the complaint alleges, "suddenly and carelessly driven backward from the westerly curbing of J Street, where the car had been parked, and struck the automobile which plaintiff was, as aforesaid driving."  At the time of the collision, so the complaint alleges, it was "more than a half an hour after sunset," and "it was dark, cloudy and raining, and the atmospheric conditions rendered the operation of vehicles dangerous to the traffic on and use of highways."  The result of the collision, so the complaint avers, was that the windshield of plaintiff's automobile was broken, and a piece of the glass from said windshield was, by the impact, thrown against and struck the right eye of plaintiff "and greatly damaged and injured the same"; that the injury so received to his said eye was of such a character as that "plaintiff is compelled to wear glasses and is not able, and will not be able, to engage in such remunerative occupations as he would otherwise be able to engage in were it not for the injuries so received to his said eye; that the plaintiff, on account of said injury so received by him to his said eye, has been damaged in the sum of $25,000."  It is alleged that, at the time of the collision the said auto-truck of the defendant "had no lights either in front or in

the rear, as required by law, or at all, and said auto truck was then and there driven by said Ray Summers in a careless and reckless manner and without fault or negligence on the part of plaintiff.''

The answer, while admitting that the windshield of plaintiff's automobile was broken by a collision between the latter's car and the defendant's truck, on the occasion mentioned· in the complaint, denies all the other averments of the last-named pleading, and as a special defense, sets up the plea of contributory negligence on the part of the plaintiff, which negligence, so the answer charges, was the proximate cause of the collision and the resulting injuries to plaintiff.

The plaintiff contends here that the evidence addressed to the issues shows, as a matter of law, that the plaintiff's injuries were directly or proximately and solely caused by or through the negligence of the defendant ·or its employee, without any fault or negligence whatsoever on the part of the plaintiff. It is further insisted that the evidence upon its face shows that plaintiff was not guilty of contributory negligence and that but for two erroneous instructions given by the court upon the question of contributory negligence, the verdict would probably have been for the plaintiff. .

The evidence shows that at the time of the accident plaintiff was twenty-four years of age and was in the employ of the Standard Oil Company in the city of Fresno as its advertising manager, his duties as such requiring him to travel through some four or five different counties adjacent to and in the neighborhood of Fresno County, at various intervals of time. He had, prior to the accident in question, met with another accident in which he suffered the loss or use of his left eye or, as he described the condition of the left eye, "I had no vision in my left eye at all—I could barely tell night from day, and my right eye was perfect." He had never, prior to the accident in question, in which his right eye was injured, used eye-glasses.

The evidence, without conflict, shows that it was dark at the hour at which the accident happened—between 5 and 6 o'clock P. M.—that it was raining and had been prior to the happening of the collision, and that the streets, due to the rain, were "slippery." The evidence, without conflict, further shows that the street in the block in which the accident occurred was lighted—that is, the street lights, four on each

side of the street in said block, were on and reflected their usual light along and over the street.

The plaintiff testified that, within a brief time after 5 o'clock P. M. on the day of the accident, he started from the office of the Standard Oil Company and went to a point on the street near said company's office where he had parked his Ford automobile or roadster, intending, accompanied by a Mr. Beebe, also employed by said company, to drive to the place of business in Fresno of a Mr. Mugniani; that he and Beebe entered the machine and proceeded on their way south on the right-hand side of J street, at the rate of about twelve miles per hour; that, as driver of the machine, he sat on the left-hand side thereof; that the lights of his car were on; that he was "driving cautiously, the streets were wet and raining, and just as I got in front of Neilsen's, why a truck backed right out into my car—at least, we got together right there in front of Neilsen's and broke the car up and smashed it all to pieces, in fact, and the windshield broke. Part of it went to my right eye, piece of glass into my right eye and cut it, and I went to the Emergency Hospital and later to the Burnett Sanitarium." He stated that he was at the time driving "astraddle of the right-hand tracks of the street car, with my left wheel near the left-hand side of the right-hand tracks"; that the truck "backed out from the curb, I guess at an angle of 45 degrees towards me"; that there were no lights on the truck. The roadster came in collision with the "corner of the bed of the truck," the plaintiff's car being struck "practically in the center of the radiator." He stated that he was within six feet of the truck before he saw it moving into the street from the curbing; that "it came right out within the scope of the lights on my car." He further stated that as he was driving he was looking "straight through" the windshield of his car and could discern objects before him, although, he admitted, the windshield was wet from the rain, the roadster having been parked and having remained in the street while it was raining before he started out with it and that at the time he was driving there was rain still running down the windshield.

The injury to his right eye was of a serious nature and the vision thereof materially impaired permanently, so the doctor who attended him testified.

C. H. Beebe, the party riding with the plaintiff when the accident occurred, was thrown against the windshield by the force of the collision and received a few minor bruises and lacerations of the flesh. His testimony corroborated in all substantial particulars that of the plaintiff. He stated that at the time that the plaintiff was driving down J Street and just before the accident happened the rain was running over and down the windshield of plaintiff's car. He declared, though, that his vision through the windshield was perfectly clear.

There were a few other witnesses who were in the immediate vicinity of where the accident occurred at the time of the happening thereof, and who testified, for the plaintiff, as to the fact of the collision, but whose testimony, except that of the witness Hopwood, furnished meager information as to the manner in which the collision happened to be brought about. The witness Hopwood described the manner in which the collision occurred about as the plaintiff and Beebe did. He said the truck was moving and backing into the street from the curbing when the Ford roadster struck it.

Ray Summers, the driver of the defendant's truck, testified that about five or ten minutes after 5 o'clock P. M. he left the defendant's store, went to where the truck had been left standing by him, and "turned on the Presto for my lights—tried to light them and they wouldn't light, so I turned my Presto out and cranked the machine and got in the machine and started to back out"; that, in backing, an autotruck has "but one speed" which is lower than the low speed going forward; that on the occasion of the accident he backed out "very slow" for a short distance, when he observed the plaintiff's car traveling toward him and that he thereupon stopped his truck. He testified that, when he stopped the truck, plaintiff was at a distance of twenty-five feet from him or where his truck was standing. He testified, as did other witnesses, that the effect of the striking of the truck by the Ford car "straightened my truck out, as if I had been backing straight forward from the curb. . . . I mean at right angles to the curb. It was turned by the impact at an angle to the curb about 45 degrees." In other words, he explained that "the impact threw it (the truck) so it was straight toward the curb."

John De Camp witnessed the collision and saw the truck back out from the curbing immediately prior thereto. He stated that the truck was stopped before the collision occurred.

Milo L. Rowell, manager of the defendant's business in Fresno, testified that the autotruck, with which the plaintiff's car collided, measured fifteen feet and six inches in length, that the width of the rear of the bed was six feet and two inches, and that the weight of the machine was 4,370 pounds. He also stated that the weight of plaintiff's roadster was 1,600 pounds. This witness further testified that he had ascertained that the sun set on the day of the accident at the hour of 4:49 o'clock P. M.

The foregoing comprehends a fair statement of the evidence introduced before the jury by both parties.

It will be in order first to consider the point made by the plaintiff that the defendant was guilty of negligence *per se* by reason of its failure or omission to have the lights of its truck on at the time the accident occurred.

Section 13 of the State Motor Vehicle Act, as amended by the legislature of 1919 (Stats. 1919, pp. 191, 206), which governed at the time the accident in question occurred, provided, among other things, that: "All times during the period from a half hour after sunset to a half hour before sunrise, every automobile while on the public highway, shall carry at the front at least two lighted lamps, and every such automobile . . . at the times and under the conditions in this section hereinabove specified, shall carry at the rear a lighted lamp exhibiting a red light plainly visible, under normal atmospheric conditions, for a distance of five hundred feet toward the rear and so constructed and placed that the number plate carried on the rear of such automobile or trailer shall be illuminated by a white light . in such manner that the number thereon can be plainly distinguished under normal atmospheric conditions at a distance of not less than fifty feet toward the rear," etc.

Subdivision d of the same section requires that at the time and under the conditions specified by said section every motor-truck of two tons carrying capacity or over "which is so governed or mechanically constructed or controlled that it cannot exceed a speed of fifteen miles per hour, shall carry at the front at least two lighted lamps which shall be

visible at least 200 feet in the direction in which the motor-truck is proceeding, and when the vehicle is proceeding on a street or highway not so lighted as to reveal any person, vehicle or substantial object on the street or highway straight ahead of such motor-truck for a distance of at least 200 feet such front light shall be sufficient to reveal any person, vehicle or substantial object on the road straight ahead for a distance of 75 feet or over and shall be equipped with a tail light such as required on other motor vehicles.''

It is admitted that the accident happened after the sun had set and that the defendant had no lights on his truck, either in front or the rear thereof, at the time he started to back it from the curbing into the street. The evidence is not clear as to the precise time at which the accident occurred. The plaintiff, as seen, stated that he left the office of the Standard Oil Company at about 5 o'clock P. M., went to where his car was parked, a short distance from the company's office, entered the car and "shortly after 5 o'clock" was proceeding down J Street, being stopped for a moment by a traffic officer before reaching the point at which he ran into the truck. Summers, driver of the truck, did not attempt definitely to fix the time the accident happened, but did state that his working hours were from 7 o'clock A. M. to 5 o'clock P. M. each day, and that he invariably quit working at the latter hour. The witness, De Camp, fixed the time at between 5 and 5:15 P. M.

It will be observed from a reading of the above excerpts from section 13 of the Motor Vehicle Act of 1919, that, if the accident occurred after the lapse of half an hour after the sun set on the day of the mishap, the omission of the defendant to carry lighted lamps, both in front and in the rear of the truck, at the time of the accident, constituted on its part negligence *per se,* or as a matter of law. If, on the other hand, the accident occurred before the lapse of half an hour after the sun set, then the question whether the defendant was guilty of negligence at all was one of fact for the determination of the jury. As to this matter, however—that is, as to the precise time at which the accident occurred—the evidence appears to be rather indefinite and uncertain. One of the witnesses for the defendant, it is true, fixed the time at between 5 and 5:15 o'clock P. M. This would bring the time of the accident within the half

hour after sunset, the sun having gone down at 4:49 P. M.
But the testimony of the plaintiff and the witness Beebe on
this point that they left the Standard Oil Company's office
at 5 P. M., walked a short distance to the plaintiff's car,
entered and started the car and proceeded at the rate of
twelve miles per hour until the crash came, would give the
jury some foundation for calculating the time it took them
to reach the point where the collision occurred and the jury
could thus have felt justified in concluding that the accident
occurred after the expiration of half an hour after the sun
had set.    Thus there may be some ground for the theory
that, upon the question as to the time of the accident, there
was and is some conflict in the evidence.    [1]   In this state
of the evidence upon that proposition, it was for the jury to
determine the time, either with some degree of exactness or
at least approximately.    It follows that it cannot be said
that the defendant, in so far as is concerned its failure to
carry lighted lamps on its truck at the time of the accident,
was guilty of negligence *per se*.    This is not to say, however,
that it was not within the province of the jury to decide
whether the defendant was guilty of negligence by reason of
the fact that it moved its truck from the curbing into the
street without having a lighted lamp in the rear visible a
sufficient distance from where it stood or was moving to
enable the driver of an automobile proceeding toward it, by
the exercise of ordinary care and caution, to see it in ample
time to avoid colliding with it.    But, conceding the negli-
gence of the defendant, the question arises whether or not
the plaintiff himself, in driving his car, while approaching
the place where the truck was, was guilty of negligence with-
out which the accident would not have occurred.    In other
words, the question is whether, as the answer charges and
the defendant here contends, the plaintiff was guilty of
negligence which proximately contributed to the accident.

It may be granted that the question whether or not the
accident was proximately caused by the alleged contributory
negligence of the plaintiff is a close one.    It is for this
reason peculiarly one the determination of which was for the
jury.    Indeed, carefully considering all the evidence and the
inferences reasonably deducible therefrom—inferences which,
it must be assumed from the verdict, the jury did draw—we
cannot reconcile ourselves to the conclusion that, as to the

effect of the evidence, a court of review would be authorized to substitute its judgment for that of the jury. [2] A jury is not bound or compelled to accept the testimony of any witness as conclusive upon the fact or facts to which he testifies. [3] The triers of fact are always the exclusive judges of the credibility of any witness testifying before them, and, while they must start out with the presumption that the witness intends to and does speak the truth, still such presumption may be overcome by the manner in which he has testified, by the character of his testimony, or by evidence impeaching his character for truth, honesty and integrity, etc. (the latter test not involved herein), or by contradictory evidence. (Code Civ. Proc., sec. 1847.) The manner in which the plaintiff and the witness Beebe testified was before the jury. It is not here and in the very nature of the situation could not be. There was no affirmative contradiction of their testimony. But may not the manner in which a witness testifies often operate as effectually as in impeachment of the verity of his story as proof of a positive character tending to contradict him? See *Clark* v. *Tulare Dredging Co.*, 14 Cal. App. 414, 431 et seq. [112 Pac. 564], for an answer to this question. Then there may exist in the case certain physical facts (indeed, there are such facts in this case) which are irreconcilable with the testimony of the witness, or at least, so a jury might justly find.

In the instant case the plaintiff, who was driving the machine, was much handicapped in such employment from the fact that he had the use of but one eye and this under weather and atmospheric conditions which greatly augmented the inconvenience and the danger of driving a car after the sun had passed to the other side. The streets were more or less slippery, making it a difficult undertaking to stop an automobile in one of those dangerous emergencies which only too often arise in automotive traffic, and there was the added peril ordinarily incident to the blurring of the windshield of a car as the result of rain water flowing down and over it. [4] And in this connection it may be suggested that the jury might well have given little weight to the testimony of the plaintiff and the witness Beebe to the effect that, although the windshield of the Ford was wet and the rain still running down and over it, they were able to see through it with perfect clearness and so observe objects

before them; for it is a matter of common knowledge that, when there is water on glass, the vision of one attempting to look through it becomes so obscured as to make it very difficult, even to those having normal eyesight, to discern distinctly an object even a short distance before him and the vision naturally will become the more obscured when the water is falling upon and trickling down and over the glass. This must be particularly true as to the windshield of an automobile while the machine is moving at the rate of twelve or fifteen miles an hour. But equally as important as are the foregoing considerations, in the determination of the weight to which the testimony of the plaintiff and Beebe was entitled, and also as bearing upon the question whether the plaintiff, under the conditions shown to exist at the time referred to, exercised that care—at least ordinary care—which the law requires of a driver of an automobile operating the same on the public highways, is the circumstance that the collision was of such force as not only to have practically demolished the Ford machine, but to have caused the large, heavy truck to be moved or thrown from its original position, at an angle to the curb of about forty-five degrees, to a position in which it stood at right angles to or in a straight line toward the curb. This circumstance was important in the matter of the determination by the jury of the rate of speed at which the plaintiff was driving. [5] At all events, it is clear that upon this record it does not lie in the mouth of a court of review either to hold that the evidence, as a matter of law, discloses that the direct cause of the accident was the negligence of the defendant, or likewise to hold that, even conceding that the defendant was guilty of negligence which was, in a measure, responsible for the injuries of the plaintiff, the plaintiff himself was wholly free from blame or not guilty of negligence without which the accident and its consequences would not have occurred.

[6] The law is, as the trial court in clear language stated it to the jury, that "negligence on the part of the plaintiff amounting to a want of ordinary care which, operating concurrently with the negligence of the defendant, contributes proximately to plaintiff's injuries, will prevent a recovery in this action by plaintiff, whether or not defendant, by the exercise of ordinary care, could have guarded against it."

After reading to the jury certain provisions of the Motor Vehicle Act setting forth certain rules as to the care with which and the speed at which the driver of any vehicle shall operate the same upon any public highway, and also as to the character of the headlights of motor vehicles and how such lights shall be "arranged, adjusted and constructed where the car is fully loaded," the court instructed the jury, in two different instructions, that if they "find from the evidence that the plaintiff violated any of these rules, and that such violation contributed to the injuries complained of by plaintiff, you must find for the defendant."

[7] Those instructions do not accurately state the rule, because of omitting the word "proximately," so that they would have read in part, if said word had been used: "Such violation *proximately* contributed to the injuries complained of," etc. But the error in giving said instructions was fully cured by a correct statement of the rule in several other instructions embodied in the court's charge, and particularly by the following given instruction: "Contributory negligence is defined as that negligence of plaintiff which contributes to his injuries *and without which said injuries would not have occurred.*"

In view of the foregoing, and the other instructions in which the rule was properly and clearly stated, we do not see how the jury could have been misled to the prejudice of plaintiff by the instructions complained of.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.