[Civ. No. 3567. Third Appellate District.—October 10, 1928.]

RAMONA LITTLE, Respondent, v. LOS ANGELES RAILWAY CORPORATION, Appellant.

Gibson, Dunn & Crutcher for Appellant.

Bertrand J. Wellman for Respondent.

HART, J.—This action is by the plaintiff to recover damages in the sum of twenty thousand dollars from the defendant for personal injuries alleged to have been caused by the negligence of the latter. The jury, to whom the issues of fact were submitted for decision, awarded the plaintiff damages in the sum of fifteen thousand dollars. Judgment was entered accordingly. A motion for a new trial was presented and pressed by the plaintiff on all the statutory grounds (Code Civ. Proc., sec. 657), and the same was denied. This appeal is by the plaintiff from the judgment and supported by a bill of exceptions.

The plaintiff received the injuries of which she herein complains in the city of Los Angeles between the hours of 5 and 6 P. M. ("just in the twilight," the conductor testified) of the twelfth day of November, 1924. She and other persons were, at the time mentioned, passengers on a street-car of the defendant, which was traveling in an easterly direction on Macy Street, in said city. It appears that a steam train of the Southern Pacific Company runs along and upon Alameda Street, which street runs in a northerly and southerly direction. The defendant's tracks on Macy Street run in an easterly and westerly direction. The latter's tracks on Macy Street and the Southern Pacific's tracks on Alameda Street cross at right angles at Macy and Alameda Streets. The tracks of the steam railroad make a curve as they run into Alameda Street. This curve is several hundred feet from and north of the intersection of Macy and Alameda Streets. On the day and at the hour thereof stated, the defendant's car, on which the plaintiff was riding, approached from the west the point at which Macy and Alameda Streets intersect. The motorman of said car proceeded to cross Alameda Street. When the street-car got on the steam railway tracks the motorman of the street-car suddenly stopped his car while it was still on the steam railway tracks. This (he stated) was because a large autotruck was stalled in front of the street-car,

However, coincidentally with the stopping of the street-car as indicated, a train of the steam railway turned into Alameda Street and proceeded in the direction of the point where the street-car had been stopped and was still standing. Simultaneously with the appearance of the steam railway train on Alameda Street, and as it rounded the curve at Main Street, the safety gates maintained across Macy Street by the defendant were closed, or "went down" behind the street-car. As the steam train turned into Alameda Street the towerman's bell was ringing and continued to ring as the steam train was approaching the Macy Street crossing, and the headlights on the locomotive propelling the latter train reflected a bright light before the train and along Alameda Street and into the street-car. Upon observing the approach of the steam train, the passengers, or a large number of them, became frightened and greatly excited, and many of them about the same instant of time hurriedly left their seats and started toward the rear end of the car, where was located the only door in said car used for the egress of passengers. The passengers were for an instant bunched together at the rear end of the car, and some fell from the platform of the car, while others, from the consternation which had been produced among them, were shoved or pushed to the ground from the platform or the steps by other persons. The plaintiff in this action fell from the steps of the car and sustained the injuries complained of. These injuries were serious, so the doctor who professionally attended her testified. They consisted of a fracture of the ankle, "involving," the doctor said, "an outside bone, the fibula, about an inch above the ankle, which was broken in five pieces, and a fracture of the inside bone, which was broken once straight across; the ankle bone on which the weight of the body comes was dislocated backwards and inward. It was a severe fracture," continued the doctor's testimony, "and there is always a good deal of swelling with a bad fracture. There was a fracture of two bones. One of them was in five or six pieces, and the other had one piece broken off." The doctor further testified that at the time of the trial (March, 1926, some sixteen months after the injuries were received) the plaintiff was lame "and it is a painful ankle, and one that does not support the body weight well. . . . She is liable to suffer

pain from this injury in the future. . . . She would not be able to do anything that requires her standing on her feet, or anything of that kind." The physician expressed the opinion that she would never in the future be able to do any kind of work which might require her to stand on her feet, but that she could, of course, do work which may be done while in a sitting position.

The complaint as originally framed and filed joined the conductor and the motorman of the street-car as defendants with the defendant corporation, but after both sides completed the taking of testimony in support of their respective positions in the case as made by their respective pleadings, and rested, upon motion of the plaintiff the action as to the conductor and the motorman was dismissed.

The seventh paragraph of the complaint sets forth the particular acts of negligence of the defendant which, it is alleged, were the proximate cause of the injuries plaintiff sustained, as follows:

"That the defendant railway corporation by and through its motorman, John Doe Bidwell, then and there carelessly, negligently and unlawfully caused, allowed and permitted the said street car on which the plaintiff was a passenger for hire to stop upon the said Southern Pacific steam railroad tracks, and upon which said steam railway train was approaching with a bright headlight focused upon said street car, and the conductor of said street car, Richard Roe Fort, then and there, while the said street car was stopped called 'All out' to the passengers on the said street car, and the motorman then and there started said street car forward with a sudden and violent jerk, while the passengers in said car were pushing and crowding to get off the same and because of the sudden starting and jerking of the said car, and the crowding and pushing of the passengers thereon, the plaintiff and other passengers were pushed and thrown off from the said street car on to the pavement where the plaintiff was left lying, and the said street car proceeded on its way; that because of the aforesaid negligence of the defendants the plaintiff received injuries as stated in the following paragraph." (Here follows a description of the personal injuries received by the plaintiff and which is substantially the same as that given by the physician, as above shown.)

The answer specifically denies each of the material averments of the complaint and, by way of a special defense, pleads contributory negligence on the part of the plaintiff, which negligence, it is alleged, was the direct or proximate cause of the injuries she received.

There was received at the trial a vast amount of testimony, largely that of passengers on the street-car at the time of the accident, describing the excitement and the confusion among the passengers, consisting of the rushing promiscuously and frantically of the passengers toward the exit door at the rear end of the street-car, when the steam railway train entered upon Alameda Street and proceeded toward the point where the street-car stood on the tracks of the former. It is not necessary to recite herein that testimony or the substance thereof, since counsel for the defendant, in their opening brief, make this very candid admission:

"In our opinion, the evidence was insufficient to justify a verdict against the defendant, but under the rules governing the determination of appeals, we doubt if this court can say, as a matter of law, that the defendant was not negligent, or that the plaintiff was guilty of contributory negligence. We do believe, however, that the verdict was the result of errors in law committed by the learned trial court in the admission and rejection of evidence and in the giving and refusing of instructions."

But the testimony of the plaintiff and that of another witness (a Miss Delura, who was also a passenger on the street-car at the time of the mishap) may properly and, we think, should be given herein in substance.

The plaintiff testified that she was a passenger on the street-car at the time mentioned herein and that, while said car was approaching the Alameda Street crossing, she, with other passengers, was standing at the rear end of the car, which was then "crowded with passengers"; that, when the car had reached the tracks of the steam railway, it stopped on said tracks, at which instant of time she observed the conductor of the street-car leave the car for a few seconds and then return; that she did not know whether or not the conductor, after stepping to the pavement from the car, went toward the front end thereof, but that just before or at the time he returned to the interior

of the car, there was considerable excitement among and noise produced by the passengers, some of them "screaming" and rushing toward the rear end of the car; that about the same time, but after stooping and looking toward the north (the direction from which the steam railway train was approaching the street-car), through a window of the street-car the conductor exclaimed or yelled, "Everybody off!"; that thereupon many of the passengers, including herself, in great confusion, pressed toward the steps of the car, and that while she and a few others were near the steps and about to step down and make their exit, the car was suddenly started with a jerk or lurch, with the result that she and several other passengers were violently thrown to the pavement. On cross-examination, plaintiff stated that she did not attempt to leave the car before it was started; that it was standing still when she started to get off the car, and that (repeating) it was while she and a few others were near the steps, heeding the warning given by the conductor, that she and other passengers, in attempting to leave the car, were thrown with great force to the street by a sudden lurching forward of the car. The plaintiff was asked many questions on cross-examination relative to the circumstances immediately attending the accident, but she, in all vital particulars, faithfully adhered to the story of the accident as she told it on direct examination.

Miss Winifred Delura (above referred to), a passenger on the street-car on the occasion the plaintiff received her injuries, testified, on direct, in part, as follows:

"I was a passenger on an eastbound street car on Macy street, where the same crosses the railroad tracks on Alameda street, Los Angeles, on this date. The gates were down; street car stopped; gates went up and the car started again—stopped in middle of the track. The engine was approaching and everybody got excited, and the conductor said, 'Everybody off.' Just as we started to get off the car started and threw us all to the street. . . . It was about 5 or 5:15—it was just about dark. The locomotive headlight was burning; the engine bell was ringing. The locomotive was moving and about 75 or 100 feet away from the street car. When the street car stopped on the railroad track, the conductor said 'Everybody off.' Then the passengers began to get off and got excited. Just at

that moment the car started up. Miss Little and I was on the steps; the street car started with jerks and threw us both to the street, and I fell on top of her. Miss Little and I and another fellow were thrown to the street—I can not recall his name. Miss Little was lying in the middle of the street and I was on top of her and that man fell on top of me. . . . The car never stopped, kept right on going. A passing motorist picked us up and took us to the Receiving Hospital."

Cross-examined, Miss Delura said that at the time of the accident she was not a friend or a personal acquaintance of the plaintiff; that for the first time she learned her (plaintiff's) name "when she went to the hospital"; that she (witness) and the plaintiff were on the steps of the car when the car started with a sudden jerk. She further testified, on cross-examination: "I was seated in the back end of the street car. The middle of the car is closed. . . . I could not see the front of the car at all; there were too many people on the car. I was seated on the left of the car, and the engine was on the left. . . . It seemed like 15 minutes from the time the street car stopped and when I got off the car, I could not say just how long. When I first saw the engine it was about 75 or 100 feet away; when I started to get out of the car, it seemed to me it was right upon us, from the arc light of the engine; . . . the engine was moving at the time I got off the car; I heard the bell ringing; I was considerably excited at the time; I thought I was going to be run into and was afraid I would be seriously hurt. I did not see the conductor, and do not know where he was—I did not turn around to look." She stated that the exclamation "Everybody get off!" came from behind her; that she did not know the conductor, nor was she familiar with his voice, and did not know his voice from that of any other person; that she could not say definitely that it was the conductor who exclaimed "Everybody off!" but that she felt sure that "it was him" who uttered those words.

A statement by Miss Delura relative to the circumstances of the accident was taken and reduced to writing the day following that upon which the accident occurred. That statement was introduced in evidence by the defense. Therein she stated that, as the steam train was approaching

the point at which the street-car stood, someone exclaimed "Everybody off!" but that she did not know who made the exclamation. She in that statement further said that both she and the plaintiff jumped from the car.

There is other testimony, given by other witnesses, that the street-car started to move as some of the passengers were in the act of stepping or jumping from the car.

Since it is conceded by counsel for the defense that the state of the evidence is such that the question of the negligence of the defendant and that of contributory negligence of the plaintiff were for the jury to determine, it is not necessary to proceed further herein with an examination and review of the evidence. We will, therefore, proceed to consider the points of law raised herein by the defendants. First, we should notice the suggestion by counsel for the defense that it is very doubtful whether the act of the conductor in warning the passengers to leave the car, as above explained, was within the scope of his duties as conductor or agent of the defendant. *Waniorek* v. *United Railroads,* 17 Cal. App. 121, 131 [118 Pac. 947], is cited as lending some support to the suggestion. ▮ It is, of course, true that the defendant can only be held liable for the damage done to the plaintiff upon the doctrine of *respondeat superior,* and, therefore, any act of the conductor, although done while he is actively engaged in discharging his duties as such, but which does not fall within the scope of such duties, cannot bind the defendant, if physical injury or other damage to a passenger or other person or his property be directly caused thereby. These are elementary propositions. But common carriers of passengers for hire or reward (and plaintiff was in this case of that class) are charged with the "utmost care and diligence" for the safe carriage of their passengers (Civ. Code, sec. 2100). ▮ It is the duty of such carriers or their agents and employees having direct control of transportation agencies (railway trains, street-cars, or other vehicles so used) to use and be prepared to use all reasonable means to secure the safety of their passengers. In other words, a carrier of persons for reward, while not required to use, for the safeguarding of its passengers against injury "every possible preventive which the highest scientific skill might suggest," are, nevertheless, "bound to use the best precautions in known

practical use to secure the safety of its passengers."
(*Treadwell* v. *Whittier*, 80 Cal. 574 [13 Am. St. Rep. 175,
5 L. R. A. 498, 22 Pac. 266] ; *Marovich* v. *Central California
T. Co.*, 191 Cal. 295, 301 [216 Pac. 595].) ▆ Applied to
the situation as presented in the instant case, that state-
ment of the rule means, as in effect it has been stated
above, that it was the duty of the conductor to resort to
any reasonable means which human agency would permit, or
his judgment, under the circumstances, might suggest, that
would secure the safety of the passengers. His judgment,
according to plaintiff's testimony, was that the best course
to be pursued by the passengers was to leave the car, and
in expressing or manifesting such judgment by the warn-
ing given by him to that effect, he was clearly acting within
the sphere or scope of his duties as such conductor. The
case of *Waniorek* v. *United Railroads, supra,* as we under-
stand the opinion, lays down no different rule. And it
would, indeed, be strange if it did.

▆ By the foregoing observations it is not to be under-
stood that we are holding that the act of the conductor in
giving the warning or direction to the passengers to leave
the car was alone the proximate cause of the accident or
plaintiff's injuries. If that were all that there was to the
case as to proximate cause, the direction by the conductor
to the passengers that they leave the car might well have
been found by the jury to have been, under the circum-
stances, the safest course to pursue to secure the personal
safety of his passengers. But this is not the only alleged
act of negligence relied upon by the plaintiff. It is al-
leged in the complaint, and there is testimony supporting
the allegation, that as some of the passengers, including
plaintiff, were in the act of leaving the car, in response to
the direction by the conductor that they do so, the motor-
man suddenly started the car and in such manner as to
cause it to start with a jerking or lurching movement. The
stopping of the car on the steam railway tracks was caused,
so the motorman and some other witness testified, by the
stalling of a motor-truck directly in front of the street-car,
and immediately upon the truck being moved from the
street-car tracks and the way being clear, the motorman,
without any signal from the conductor, started the car.
The conductor himself testified that the signal which he was

required to give the motorman to stop the car or to proceed after it had been stopped was by means of a bell, and that on the occasion in question he gave no signal at all to the motorman. It was the motorman's duty to remain standing where he stopped the car until signaled by the conductor to proceed. It was his duty, before starting, to signal the conductor that the track was clear, a fact which he was in a better position to know than the conductor, and the duty of the conductor, on receiving such signal from the motorman, to signal the latter to proceed, only, however, when the situation in the car with regard to the passengers was such as to make it safe to proceed. These were, under the circumstances, the respective duties of the conductor and the motorman, irrespective of whether there were formal rules or regulations from any source requiring such a course. That such are the customary duties of conductors and motormen of street-cars is a matter of common knowledge. Thus it is plain that it was the concurrent negligence of the conductor and the motorman of the car which, as there is evidence to show and as the verdict implies, constituted the proximate cause of plaintiff's injuries.

As to the legal points urged for a reversal, it is to be remarked that, while counsel for the defendant specify a large number of alleged errors in the trial court's rulings permitting and excluding answers to certain questions to certain witnesses, they argue in their briefs two of such assignments only, from which it is to be presumed that they have abandoned all others of the specifications in that particular. The motorman was called and examined as a witness by the plaintiff under section 2055 of the Code of Civil Procedure, and, among other questions propounded to him by counsel for the plaintiff, were the following: 1. "Did you ever stop before on a railroad track when there was a railroad train coming?" to which objection was made by counsel for the defendant and overruled by the court, but to which no answer was returned by the witness. 2. "Did you ever stop before on a railroad track when there was a steam train coming toward you in the night-time with a bright headlight shining on your car?" to which objection was interposed by counsel for the defendant and the same overruled, and to which the witness answered in the negative. The purpose in asking those questions, say

counsel for the plaintiff, was to rebut the statement of the motorman that, although he saw the steam railway train on the track, that the headlight of its locomotive was reflecting a bright light on the street-car and that the bells of warning were ringing, he was not at all nervous. The significance of the fact of the nervousness of the motorman, if he was nervous, was in that it would tend to show that, having never before as a motorman been so suddenly thrown into a situation beset by so great a peril, he became excited and nervous and as a consequence bereft of his normal mental poise, in which condition he would probably start the car with a suddenness equal to the suddenness of the appearance of the perilous situation, and thereby cause it to jerk or start with a lurching movement. Upon that theory the questions objected to were not improper. But, in any event, the questions and the answer to the last propounded were not so baleful as to justify us in holding that they played any part in bringing about the verdict. The motorman positively stated that he was not excited or nervous at the time and likewise declared that he started his car in the usual way, or without a jerking or a lurching movement.

The second assignment under the present head is in the refusal by the court to strike from the testimony of Miss Delura the statement that the conductor called "Everybody off!" The ground of the motion was that the witness' statements that it was the conductor who made that exclamation involved only her conclusion or a mere assumption on her part, since she admitted that, when the exclamation was made, she did not see or was not looking at the conductor, and that she could not definitely say who made it. The motion was properly denied for at least one reason, to wit: That it was corroborative of the testimony of the plaintiff that such an exclamation was made by someone, the plaintiff positively asserting that it was the conductor. Certain of the other witnesses (passengers) declared that they heard no such exclamation uttered at all. With that testimony the testimony of Miss Delura that it was made, even if she did not know who made it, was at variance or in sharp conflict. Her testimony was competent and relevant. Its weight was, of course, a question for the jury to decide.

■ The following portion of an instruction, given by the court, is among those likewise given which the defendant contends involves a misstatement of the law:

"The plaintiff was a passenger for hire upon the street car of the defendant. The defendant is a common carrier, and common carriers of passengers bind themselves to carry safely those whom they take into their cars so far as human care and foresight will do so; that is, with the utmost care and vigilance of a very cautious person, and such carriers are responsible for any, even the slightest, negligence, causing injury to their passengers."

The criticism directed against the instruction, as it is above set forth, is that the statement therein that carriers of persons for hire "are responsible for any, even the slightest, negligence, causing injury to their passengers," is not a correct announcement of the legal principle thereby attempted to be stated, in that it fails to state that such negligence must be shown to be the *proximate* cause of the injury. The court, in its charge, in numerous instances, stated in clear and readily understandable language, that the plaintiff could not prevail unless it was shown that the injuries she received were proximately caused by the negligence of the defendant. ■ The instructions given by the court should be considered together, or as a whole, and if, as so considered, they correctly state the law applicable to the case, a reversal should not be had because it may happen that one instruction, taken alone, would embrace an erroneous announcement of the true rule as to any one particular phase or element of the case. (See *Phillips* v. *Hobbs-Parsons Co.*, 67 Cal. App. 199, 210 [227 Pac. 622]; *People* v. *Mendenhall*, 135 Cal. 344, 346 [67 Pac. 325]; *People* v. *Del Cerro*, 9 Cal. App. 764, 769 [100 Pac. 887].) But, as stated, the instruction under review, and as hereinabove quoted, is a detached part of an instruction given by the court in this case. The part omitted is as follows:

"They (carriers of passengers) are required to do all that human care, vigilance and foresight reasonably can do under all circumstances to prevent accidents to their passengers, consistent with the practical operation of such cars, and if they fail in these regards and because thereof a passenger is injured who is in the exercise of reasonable care,

they are liable to said passenger for all damages for injuries sustained."

The foregoing and the part hereinabove set forth were given as separate instructions in *Rystinki* v. *Central Traction Co.*, 175 Cal. 336, 343 [165 Pac. 952, 955]. The part first hereinabove quoted was criticised in that case as involving a misstatement of the law, but the court said that when the two instructions were considered together, "they correctly stated the law." It is true that the specific criticism here directed against the part of the instructions first hereinabove given was not, evidently, made in the case cited, as nothing is therein said regarding the omission to state in the instruction that the negligence for which the carrier would be responsible, if such negligence caused injury to a passenger, must, to bind the carrier, be the *proximate* cause thereof. We may assume, though, that in other parts of its charge the trial court in that case clearly explained to the jury, as was done in the instant case, that liability for the injury received by the passenger could not attach to the carrier unless the negligence of the latter was the direct or proximate cause of such injury.

The defendant requested the following instruction, which the court refused to embrace within its charge: "If the plaintiff was injured as the direct and proximate result of the mutual fault of herself and any servant or agent of the defendant . . . , then your verdict must be for the defendant, . . ." Counsel for the defendant assert that no such instruction was given to the jury by the court. We think the principle stated in the refused instruction was fairly covered by the following, which was given by the court:

"In order, therefore, to find a verdict for the plaintiff, you must not only find from a preponderance of all the evidence that the defendant was negligent, but also that such negilgence was the proximate cause of the injury to plaintiff, and you must further find that the evidence fails to show by a preponderance thereof that the plaintiff was guilty of negligence, however slight, contributing proximately thereto; otherwise your verdict must be for the defendant."

That instruction, under a fair and reasonable construction thereof, states that a verdict for the plaintiff would not

be justified if it was found that, although the negligence of the defendant was a proximate cause of the injuries, plaintiff's negligence also contributed thereto. In other words, the instruction under a reasonable interpretation of its language, says, and the jury could readily have so understood it, that if the injuries to plaintiff were proximately caused by the concurrent or mutual negligence of both the plaintiff and the defendant, then the plaintiff would not be entitled to recover.

There are many other specifications involving the action of the trial court in giving, and also in refusing to give, certain instructions proposed by the defendant. We cannot give specific attention herein to all those assignments, of error. Nor is it deemed necessary to do so. We have painstakingly examined the entire charge of the court and also those instructions requested by the defendant and disallowed by the court which are not specially noticed above. It is hence considered sufficient to say, in a general way, that the charge of the court embraces a full, fair, and correct statement of the law applicable to a personal injury case and pertinent to the situation as it was developed and presented by the evidence. Thus also have we found that every principle of law stated in the rejected instructions which were proposed by the defendant was covered by the given instructions.

No claim is made that the damages awarded are excessive. Therefore, consideration in the nature of argumentative analysis of the testimony of the physician professionally attending the plaintiff as to the extent and nature of her injuries is not called for.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 9, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal was denied by the supreme court on December 6, 1928, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing in the supreme court is denied, but such denial should not be taken

as an approval of what is said by the district court of appeal with reference to the duties, as a matter of law, of the motorman and conductor under the circumstances shown in this case.

All the Justices concurred.