[Civ. No. 581. Fourth Appellate District.—December 12, 1932.]

CHARLES HANSON et al., Appellants, v. JULIUS HESS, Jr. (a Minor), et al., Respondents.

Joseph Seymour for Appellants.

Estudillo & Schwinn for Respondents.

BERNARD, P. J.—In this action the plaintiffs sought to recover damages for the death of their son Edwin J. Hanson, resulting from an automobile accident · which occurred at the intersection of Lime Street and Twelfth Street in the city of Riverside. Lime Street runs north and south and Twelfth Street east and west. The deceased, who was twenty-seven years old, was driving an automobile westerly on Twelfth Street about 10 o'clock on the morning of a clear day. Julius Hess, Jr., who was about sixteen years of age, was driving another automobile south on Lime Street and the two cars collided at this intersection, which is conceded to have been a "blind corner" within the meaning of the California Vehicle Act. Edwin J. Hanson was almost instantly killed and this action was brought against the driver of the other car, together with his father and mother, who had signed the minor's application for a license. The action was defended upon the double ground that the deceased had been guilty of contributory negligence and that the driver of the other car had not been guilty of negligence. The jury returned a verdict in favor of the defendants and from the judgment which followed the plaintiffs have appealed. A purported appeal was also taken from the denial, by operation of law, of a motion for a new trial, which need not be considered here since no appeal lies therefrom.

The only grounds for reversal relied on relate to the giving and refusing of certain instructions. ▮ Most of

these are not very strenuously urged, are without merit and need receive but slight consideration.

The first instruction sets forth the issues which the jury were to decide, and a small portion thereof, a part of one sentence, is attacked as misleading and as omitting one issue. Not only is the portion questioned not susceptible to the construction placed upon it by the appellants, but the instruction in its entirety fully and fairly sets forth the issues. The claim is made that instructions numbered 7, 11 and 34 are confusing and erroneous, but no attempt is made to point out how they are confusing or in what respect they are erroneous. They are a part of a series of instructions defining negligence and contributory negligence, and do not materially vary from the usual and ordinary form of such instructions. It is then urged that instruction number 12 is contradictory, an invasion of the province of the jury, and not a correct statement of the law. This contention is supported neither by argument nor authority and we are not even told what it contradicts, how it invades the province of the jury or why it is erroneous. It is also suggested that there is no evidence in the record justifying the giving of this instruction. The instruction was one relating to the duty of a driver confronted with sudden peril, the giving of which was amply justified by the evidence. Instruction number 28 is attacked because the word "carelessness" was used therein instead of the word "negligence". This was an instruction on the measure of damages, its meaning is entirely clear, it could not have misled the jury, and the same matters are fully covered in many other instructions given. A similar unsupported attack is made on instruction number 39, and the same is without merit.

It is next contended that the court erred in refusing to give four instructions at the request of the plaintiffs. The first two of these were fully and correctly covered in two other instructions given, which included almost the identical language of the instruction refused. The third related to the failure of the defendant to sound a warning. There was nothing in the evidence produced at the trial which called for or justified the giving of this instruction. In the fourth of these instructions the court was asked to read to the jury a portion of an amendment to the California Vehi-

cle Act which did not go into effect until after this accident occurred. While the instruction in this form was refused, the court did read to the jury the corresponding portion of the same section of the California Vehicle Act as the same was then in force.

■ Appellants' main contention is that the court erred in giving instruction number 26, which reads as follows:

"The court instructs you that negligence on the part of Edwin J. Hanson, amounting to a want of ordinary care, which operating concurrently with the negligence of the defendant, Julius Hess, Jr., contributed to the injuries suffered by Edwin J. Hanson, will prevent a recovery in this action by the plaintiffs, Charles Hanson and Margaret D. Hanson, whether or not the defendant, Julius Hess, Jr., could have, by the exercise of ordinary care, guarded against ·it."

We are told that this instruction was based upon the case of *Phillips* v. *Hobbs-Parsons Co.*, 67 Cal. App. 199 [227 Pac. 622, 626], wherein the following appears:

"The law is, as the trial court in clear language stated it to the jury, that 'negligence on the part of the plaintiff amounting to a want of ordinary care which, operating concurrently with the negligence of the defendant, contributes proximately to plaintiff's injuries, will prevent a recovery in this action by plaintiff, whether or not defendant, by the exercise of ordinary care, could have guarded against it'."

· It is pointed out that the instruction as given differs from the language of the case cited in three respects: First, in the instruction given there is a comma after the first word "care" while in the case cited the comma is after the following word "which"; second, in the instruction here given the word "contributed" is used while in the case cited · the word used was "contributes"; third, the word "proximately" following the word "contributes" in the case cited is entirely omitted in the instruction as here given. The omission just referred to may be disregarded, as any possible error therein was covered by proper language in many other instructions given which fully set forth the rule that any contributing negligence must be such as proximately con-

tributed to the accident, in order to bar a recovery (*Phillips* v. *Hobbs-Parsons Co., supra*).

Appellants contend that the other two variations mentioned are fatal in that they completely change the meaning of this instruction to the extent that while the one in the case cited is a qualified statement telling the jury in substance "that if certain conditions exist the law is thus and so", the one here given invaded the province of the jury, told them that contributory negligence existed as a matter of fact and prevented a recovery by the plaintiffs. It is argued that this instruction directed a verdict for the defendants and expressly told the jury that "the negligence of Edwin J. Hanson contributed to his injuries and will prevent a recovery in this action by the plaintiffs". It is further argued that since this instruction directed a verdict, any error therein cannot be cured by other instructions, the case of *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 Pac. 599], being cited in support thereof. In that case there was considered a so-called "formula" instruction directing a verdict if certain facts were found, which was held to be incomplete and erroneous. The instruction here in question is not such a formula instruction and does not purport to direct a verdict. The situation existing here is not unlike that in the case of *Hodge* v. *Weinstock, Lubin & Co.*, 109 Cal. App. 393 [293 Pac. 80, 84], where the court in considering an instruction somewhat similar to the one now before us, so far as the principle involved in the rule here relied on is concerned, although otherwise different, said:

"Appellant's whole objection might be dismissed with the statement that the instruction does not direct or advise a verdict for the plaintiff. It goes little if any further than the usual instruction in negligence cases that where one is shown to have been guilty of negligence, he is liable in damages for the injuries proximately occasioned thereby. In a proper case, as here, other and qualifying instructions follow. But reading the instruction as appellant reads it, this rule has never been carried so far as to hold the giving of such an instruction as the one in question to be a reversible error."

And after discussing certain other cases, the court continued:

"The instruction in this case simply states that in certain circumstances stated 'a recovery of damages *may* be had for the injuries proximately caused thereby'. This instruction is far from a direction to find for the plaintiff upon the facts stated. It simply says that upon such facts you 'may' find a verdict. Other instructions fully setting forth the defenses of defendant tell the jury with equal clarity the conditions upon which they 'may not' find for the plaintiff. Read altogether the charge properly states the law, and the instruction in question does not conflict with other, and qualifying ones."

The instruction here attacked simply states that the existence of certain circumstances will prevent a recovery, while in other instructions the jury were told that in the absence of such circumstances a recovery will be permitted, in so far as that issue is concerned.

Examining the other instructions given, we find that in number 1 the jury was instructed that "it will be your duty to ascertain whether Edwin J. Hanson was guilty of negligence proximately contributing to the accident". In number 2 the jury was told not to take any one instruction by itself but to take all instructions together and in relation to each other. In number 4 the jury was told "You are the sole and exclusive judges of the facts of this case." In addition to at least six other instructions on contributory negligence, the court gave three instructions on this subject at the request of the plaintiffs. One of these, number 13, reads as follows:

"The defendants in this case have set up alleged contributory negligence of the deceased, Edwin J. Hanson, as a defense in this action.

"That is to say, the defendants claim that even if they were negligent, the deceased, Edwin J. Hanson, was also negligent.

"In this connection, I charge you that contributory negligence is a matter to be proven affirmatively by the defendants before it becomes a good defense, unless it appears from the plaintiff evidence.

"That is to say, if you believe from the evidence that the defendants were, or either of them was, guilty of negligence, causing or contributing approximately to the accident and death of Edwin J. Hanson, then the plaintiffs are entitled to a verdict against the defendants unless it is proven to you, by a preponderance of all the evidence, that the deceased, Edwin J. Hanson, was also guilty of negligence that contributed proximately to the accident.

"The burden of proving the absence of this contributory negligence is not upon the plaintiffs, but the burden is affirmatively upon the defendants to prove the contributory negligence of the deceased before it constitutes any defense to an action of this kind."

Number 21 was in language almost identical with the one just quoted. Still another, number 22, was given, reading as follows:

"In this case the defendants allege that the deceased, Edwin J. Hanson, was negligent, and that his negligence was a proximate cause of the accident in question and his death.

"The burden is upon the defendants to prove the negligence of the deceased Edwin J. Hanson, by a preponderance of the evidence, and in so considering the evidence upon this point, you will keep in mind that the law presumes that Edwin J. Hanson at the time in question here, took ordinary care of his own concerns."

In view of all these instructions, which should be read together, and since the jury was specifically told that they were the sole and exclusive judges of the facts in the case, that they were not to take any one instruction alone, and that it was their duty to pass upon the question of whether or not Edwin J. Hanson had been guilty of negligence proximately contributing to his injuries, we are unable to see how the jury could have construed this instruction as being one of fact, and as determining this issue so much stressed throughout the trial and so elaborately submitted to them. While a careful study reveals that the language used in this instruction could be given the meaning attributed to it by the appellants, not only does this require a strained construction but the natural effect of the language used, especially on the first reading, would be to

convey the idea to the jury that the court was instructing them on a matter of law and not on one of fact. In effect, the jury were told that any negligence on the part of Hanson will prevent a recovery if it concurred with negligence on the part of the defendant and contributed to the injuries sustained. While the qualifying words "any" and "if" were not used, and while the language used could be so emphasized in reading as to convey contrary meaning, a natural and ordinary reading thereof would convey the same impression as would be conveyed were the qualifying words added. This is especially true when the instruction is taken and considered with the many other instructions given on the same subject. Under such circumstances, we think it may not be assumed as possible that the jury disregarded all of the other instructions, and the evident intent of the one under attack, and accepted this instruction as one to the effect that the deceased was in fact guilty of contributory negligence, and that this fact would prevent a recovery by the appellants.

It may not be amiss to point out that the evidence in this case is such as to indicate that the jury could hardly have been expected to find the deceased free from contributory negligence. The driver of the other car testified that as he approached this intersection he was going uphill; that he was proceeding at not more than 20 miles an hour as he approached the intersection; that he decreased his speed and was not going more than five miles an hour at the time of the collision; and that the car driven by the deceased entered the intersection after he did, passing through the same at about 40 miles an hour. Another witness who was a passenger in this other car, corroborated this testimony, stating that their car had been coming at 20 to 25 miles an hour; that as it approached the intersection its speed decreased "because it was going uphill"; that just as they were coming into the intersection his attention was called to the possibility of an accident by seeing Julius Hess, Jr., put his foot on the brake; that their car swayed to the right and stopped at the northwest corner of the intersection; that as their car came to the right Julius' left fender hit the rear of the other car; that he felt no jar in the car in which he was riding and was

not thrown forward in his seat; that the other car passed in front of them at a speed of 35 to 40 miles an hour; and that the other car swerved to the left just before it passed them, turned completely over three times and came to rest in an upright position on the far side of Twelfth Street with its rear wheels on the curb. There is evidence that the only damage appearing on the Hess car after the accident was the "left front fender outside dented and a scar on left front wheel", and the Hanson car was "considerably twisted and torn, steering wheel broken off, fenders bent and in a bad state and condition". Aside from the two occupants of the Hess car only two eye-witnesses of the accident testified. One of these, who had only a fleeting glance prior to the accident, testified that the car driven by the deceased was going faster than the other car. The only real eye-witness, who observed the accident from a distance of about 350 feet, testified that the defendant's car approached the intersection at not more than 15 miles an hour and that it was practically stopped at the time of the impact; that the car driven by the deceased was traveling at a speed of 40 miles per hour or more; that there was no change in its speed as it approached the point of collision, and that: "The Hess car seemed to be slowing up, no change in the speed of the Hanson car. The Hess car was whirled to the right and came to a stop across the sidewalk on the northwest corner of 12th and Lime St. obstructing the sidewalk, remaining stationary in an upright. The Hanson car proceeded to skid slightly, rear end of car to the left continuing in a westerly direction for practically 75 feet, then turned over, lighting wheels up, then continued turning coming to a stop about 50 feet from where it left the pavement, righting itself, with hind wheels on park lawn south side of 12th St. At the point where the Hanson car hit the pavement wheels up, steering post made quite a dent in the pavement, leaving bits of the steering-wheel and the brains of Mr. Hanson."

While the situation thus disclosed may not be conclusive in view of the possible inferences from other evidence produced, this evidence does negative the theory of the appellants that the instruction complained of furnishes the only

possible explanation of the verdict of the jury, and that the only conclusion possible is that the jury took this instruction as directing them to return a verdict in favor of the defendants. While the instruction under attack was not properly worded, our conclusion is that any error therein was cured by other instructions given and was not sufficiently prejudicial to require a reversal.

The purported appeal from the denial of the motion for a new trial is dismissed and the judgment is affirmed.

Marks, J., and Jennings, J., concurred.